IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Advanced Sports Enterprises, Inc.,** *et al.*,[1] | ) | |
| | ) | **Case No. 18-80856** |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

### MOTION TO EMPLOY CLEAR THINKING GROUP LLC AS FINANCIAL ADVISORS FOR DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Advanced Sports Enterprises, Inc., Advanced Sports, Inc., Performance Direct, Inc., Bitech, Inc., and Nashbar Direct, Inc. (collectively, the "Debtors") file this *Motion To Employ Clear Thinking Group LLC As Financial Advisors For Debtors Nunc Pro Tunc To The Petition Date* (the "Motion"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for relief requested herein are section 327 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2014, 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The Debtors in this case, along with each Debtor's case number, are: (i) Advanced Sports Enterprises, Inc., Case No. 18-80856; (ii) Advanced Sports, Inc., Case No. 18-80857; (iii) Performance Direct, Inc., Case No. 18-80860; (iv) Bitech, Inc., Case No. 18-80858; and (v) Nashbar Direct, Inc., Case No. 18-80859. Each Debtor is a North Carolina Corporation.

**BACKGROUND**

3.     On November 16, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under Chapter 11 of the Bankruptcy Code.

4.     The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Patrick Cunnane in Support of First Day Motions and Applications* filed on the Petition Date and incorporated herein by reference.

5.     The Debtors have continued in possession of their properties and have continued to manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     On the Petition Date, each Debtor filed a substantially similar motion with this Court seeking to have its bankruptcy case jointly administered with the other Debtors' cases pursuant to Rule 1015(b) of the Bankruptcy Rule.

7.     As of the date of this filing, no official committee of unsecured creditors has been appointed in any of these cases, and no request has been made for the appointment of a trustee or examiner.

**RELIEF REQUESTED**

8.     Pursuant to this Motion, the Debtors seek approval by this Court of the employment of Clear Thinking Group LLC ("Clear Thinking Group") as financial advisors in these chapter 11 cases and related proceedings. The professional services to be offered by Clear Thinking Group include:

   a. Assist the Debtors with post filing communication efforts to various creditors and parties-in-interest in these proceedings;

   b. Assist the Debtors with the preparation of Schedules and the Statement of Financial Affairs;

    c. Assist the Debtors with the sale of its assets;

    d. Attend any court proceedings and provide testimony as requested by the Debtors;

    e. Assist the Debtors with the preparation of budgets, variance reports, monthly operating reports, quarterly reports, and other financial documents required during the proceedings;

    f. Assist the Debtors with the preparation and development of a plan of liquidation or reorganization; and,

    g. Assist the Debtors with any other services requested by the Debtors or counsel for the Debtors.

9. Clear Thinking Group represents no other entity in connection with these cases, represents or holds no interest adverse to the interest of the estates with respect to the matters on which they are to be employed and is disinterested as that term is defined in 11 U.S.C. § 101.

10. Clear Thinking Group has agreed to provide financial advisory services to the Debtors for compensation in accordance with the engagement agreement attached hereto and as may be subsequently allowed and approved in accordance with the provisions of the Bankruptcy Code and the fee application guidelines of this Court. On the Petition Date, the Debtors filed a *Motion for Establishment of Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals* requesting the entry of an order establishing procedures by which Clear Thinking Group and other professionals are paid by the Debtors in these proceedings.

11. Clear Thinking Group has filed herewith an affidavit pursuant to Bankruptcy Rules 2014 and 2016, disclosing the information relevant to this Motion. A copy of the Affidavit is attached hereto as Exhibit A.

12. Clear Thinking Group can and will provide specific benefits to the Debtors and its services will enhance the administration of these cases. The Debtors believe that such services will be in the best interest of all parties involved in these proceedings.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court:

1. Enter an order authorizing the employment of Clear Thinking Group to provide financial advisory services to the Debtors *nunc pro tunc* to the Petition Date; and

2. Grant the Debtors such other relief as the Court may deem necessary and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: November 16, 2018					Respectfully submitted,

NORTHEN BLUE, LLP

/s/ John A. Northen
John A. Northen
North Carolina State Bar No. 6789
jan@nbfirm.com
Vicki L. Parrott
North Carolina State Bar No. 25449
vlp@nbfirm.com
John Paul H. Cournoyer
North Carolina State Bar No. 42224
jpc@nbfirm.com
1414 Raleigh Road, Suite 435
Chapel Hill, North Carolina  27517
Telephone:  (919) 968-4441

PROPOSED COUNSEL FOR THE
DEBTORS-IN-POSSESSION

**FLASTER/GREENBERG P.C.**
William J. Burnett (PA Bar No. 75975)
(*pro hac* application pending)
Harry J. Giacometti (PA Bar No. 55861)
(*pro hac* application pending)
Damien Nicholas Tancredi (PA Bar No. 308317)
(*pro hac* application pending)
1835 Market Street, Suite 1050
Philadelphia, PA 19103
(215) 279-9383 Telephone
(215) 279-9394 Facsimile
william.burnett@flastergreenberg.com

## **EXHIBIT A**

**Marchese Affidavit**

**AFFIDAVIT**

I, Joseph Marchese, do solemnly depose and declare as follows:

1. I am a partner in the New Jersey office of Clear Thinking Group LLC, a Delaware corporation, with more than 27 years of experience as a financial consultant.

2. I, along with Clear Thinking Group LLC (the "Financial Consultants"), have been retained to serve as the financial consultants for the Debtor in this case, subject to approval by this Court, as set forth in the attached engagement letter.

3. Neither I nor the company hold or represent any interest adverse to the above-entitled estate, and therefore, both myself and the company are disinterested persons as defined in 11 U.S.C. § 101. CTG, however, wishes to disclose the following:

- CTG has provided services directly to Wells Fargo Capital Finance, Wells Fargo Trade Capital and Wells Fargo Retail Finance, and has provided services to other Wells Fargo borrowers in the past, all in matters unrelated to this case

- CTG has worked with the US Trust, Bank of America, Gordon Brothers, Hilco, Reimer Braunstein and AG Realty Partnership in other matters unrelated to this case.

4. The total compensation promised the Financial Consultants by the Debtor for the services rendered or to be rendered in connection with this case will be such amounts as may be approved by the Court after notice and hearing, and based upon the customary hourly rates charged at the time such services are rendered.

5. No compensation has been received by Financial Consultants from the Debtor or any other person on said account, except that prior to the Petition Date, the Financial Consultants received $362,682.49 from the Debtor of which $262,682.49 has been expended in payment of prepetition services and expenses. The unexpended balance of $100,000.00 will be held as a security retainer for payment of post-petition fees and expenses after all work has been completed and applied to the final fee application in such amounts as may be allowed by the Court.

6. There are no further undertakings by these or any other persons or entities to pay the Financial Consultants the post-petition fees or expenses of the Debtor. The Financial Consultants further state that no understanding or agreement exists for a division of fees or compensation between Financial Consultants and any other person or entity.

I declare under penalty of perjury that the foregoing is true and correct.

Date: November 16, 2018

_____
Joseph Marchese

Sworn to and subscribed
before me on November 16, 2018.

_____
Sandra B Williams
Notary Public
My Commission expires: 05-23-2021

[Notary Public Seal: SANDRA B WILLIAMS, CHATHAM COUNTY, NORTH CAROLINA]



**CLEAR THINKING GROUP®**

401 Towne Centre Drive
Hillsborough, NJ 08844
T: (908) 431-2121
F: (908) 359-5940
www.clearthinkinggroup.com

October 4, 2018

Mr. Patrick Cunnane
Chief Executive Officer
Advanced Sports Enterprises, Inc.
10940 Dutton Road,
Philadelphia, PA 19154

Re: Consulting Services

Patrick:

We appreciate you asking Clear Thinking Group LLC to assist you and Advanced Sports Enterprises, Inc. (Client) with its restructuring efforts. Accordingly, Clear Thinking Group LLC is prepared to act as Client's Financial Advisor prior to and in connection with restructuring advice and its potential Chapter 11 Bankruptcy Filing. The engagement becomes effective October 15, 2018 and shall also be subject to bankruptcy court approval, which Advanced Sports Enterprises, Inc. et al, will seek nunc pro tunc to the petition date, if any.

This letter outlines the understanding between Clear Thinking Group LLC ("CTG"), a Delaware limited liability company, and Advanced Sports Enterprises, Inc. ("Client") of the objective, tasks, work product and fees for the engagement of CTG to perform the services outlined in the attached Statement of Work (Appendix A). References to CTG in this agreement shall include its principals, employees and agents. This is an engagement for services only and decisions relating to the implementation of the advice and recommendations of CTG during the course of its engagement shall be made by and are the sole responsibility of the Client.

1. <u>STAFFING.</u>  Joseph Marchese, Partner, will have lead responsibility for the overall engagement management, with the assistance of or Lee Diercks, Partner. They may be assisted by other staff consultants at various levels, all of whom have a wide range of skills and abilities related to this type of assignment. In addition, CTG has relationships with and periodically retains independent contractors with specialized skills and abilities to assist us. The engagement of such independent contractors shall be approved in advance by Client.

2. <u>STATEMENT OF WORK.</u>  CTG will provide consulting services to Client as described in Appendix A, which is incorporated herein.



3. TIMING, FEES AND EXPENSES. CTG will commence this engagement on October 15, 2018 upon receipt of a signed engagement letter and payment of the retainer.

***Hourly Fees***. This engagement will be staffed with professionals at various levels, as the tasks require. Hourly fees charged for the purposes of billings will be:

| | |
|---|---|
| Partner | $600.00 |
| Managing Director | $500.00 |
| Manager | $400.00 |
| Consultant | $300.00 |
| Analyst | $150.00 |

***Cash Expenses***. In addition to the fees set forth above, Client shall pay directly, or reimburse CTG directly, for all reasonable, out-of-pocket expenses incurred in connection with this assignment such as travel, lodging, postage, telephone and facsimile charges, etc. Any single-item expense over $1,000 will be approved in advance. All such billings will be in accordance with CTG's customary practices.

***Payment***. CTG will invoice Client for all pre-petition fees and expenses on a weekly basis. All Pre-Petition invoices are due and payable immediately upon receipt via wire transfer. CTG must be paid in full prior to the filing of any Ch. 11 petition or it cannot provide Post-Petition Services. Post-petition fees and expenses will be billed on a monthly basis or as required by the Court process. All post-petition fees and expenses will be paid upon approval of the Federal Bankruptcy Court per procedures set by the bankruptcy court. Each invoice is due and payable upon approval via wire transfer.

***Retainer***. CTG is currently holding a retainer of $25,000 and will require an additional retainer of $75,000.00 for a total retainer of $100,000.00. The additional retainer is payable via wire transfer. The total retainer of $100,000.00 will be held by CTG thru the conclusion of the case. At the conclusion of the engagement, CTG will submit a final invoice for services rendered and expenses incurred and offset the final invoice against the retainer to determine the final amount due to CTG, if any. The balance of the retainer, if any, will be returned to client within ten (10) business days of the final reconciliation.

4. RELATIONSHIP OF THE PARTIES. The parties intend that an independent contractor relationship will be created by this agreement and neither party shall be considered an employee, agent or representative of the other. Employees or agents of CTG are not entitled to any of the benefits that Client provides for the Client's employees. Client also agrees not to solicit, recruit or hire any employees or agents of CTG for a period of two years subsequent to the completion and/or termination of this agreement.

5. CONFIDENTIALITY. CTG agrees to keep confidential all information obtained from the Client. Except as required by law, CTG agrees that neither it nor its directors, officers, principals, employees, agents, contractors or attorneys will disclose to any other person or

2



entity, or use for any purpose other than specified herein, any information pertaining to Client or any affiliate thereof which is either non-public, confidential or proprietary in nature ("Information") which it obtains or is given access to during the performance of the services provided hereunder. Information includes data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models, or any work product relating to the business of the Client, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. CTG may however use the Client's trade name and logo in its marketing and promotional materials, including but not limited to CTG's website and printed materials to identify the Client in connection with services provided by CTG to the Client. The Client acknowledges that all advice (written or oral) given by CTG to the Client in connection with CTG's engagement is intended solely for the benefit and use of the Client (limited to its management) in its evaluation of its business operations. Client agrees that, except as otherwise required by law or a court of competent jurisdiction, no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks and programs referred to herein without CTG's prior approval (which shall not be unreasonably withheld). This agreement shall survive the termination of the engagement provided however that information shall no longer be deemed confidential on the 10th annual anniversary of CTG's completion of the engagement.

Notwithstanding anything to the contrary herein, it is expressly agreed and understood that CTG shall be entitled to disclose and/or produce Information if it is requested or becomes legally compelled (by oral questions, interrogatories, request for information or documents, subpoena, criminal or civil investigative demand, or similar process) to disclose any of the Information. CTG agrees to provide Client with prompt written notice within a reasonable time, and no less than five (5) business days prior to any disclosure, so Client may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.

6. <u>INDEMNIFICATION</u>. Client agrees to indemnify, hold harmless and defend CTG (including its principals, employees and agents) against all claims, liabilities, losses, damages and reasonable expenses as they are incurred, including reasonable legal fees and disbursements of its counsel and the costs of its professional time (at rates in effect when such future time is required) relating to or arising out of the engagement, including any legal proceeding in which CTG may be required to, or otherwise agree to, participate in, in which it is not a party. CTG, its principals, employees and agents, may, but are not required to, engage, at Client's expense, a single firm of separate counsel of its choice in connection with any of the matters to which this indemnification agreement relates. This indemnification agreement does not apply to claims, liabilities, losses, damages and expenses that are adjudicated in a court of competent jurisdiction (after the exhaustion of any appeals) to be solely the result of gross negligence on the part of CTG.



7. <u>TERMINATION AND SURVIVAL</u>. This agreement may be terminated at any time by written notice by one party to the other, provided, however, that notwithstanding such termination CTG will be entitled to any fees and expenses due under the provisions of the agreement. Such payment obligations shall inure to the benefit of any successor or assignee of CTG. The obligations of the parties under the Indemnification and Confidentiality sections of this agreement shall survive the termination of the agreement as well as the other sections of this agreement, which expressly provide that they shall survive termination of this agreement.

8. <u>GOVERNING LAW</u>. This agreement is governed by and construed in accordance with the laws of the State of New Jersey with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof. If the parties have any dispute arising between them, including any dispute with respect to this agreement, its interpretation, performance or breach, and are unable to agree on a mutually satisfactory resolution with thirty (30) days, unless immediate action is reasonably necessary to protect an important interest of the party, either party may require the matter to be settled by either private mediation, or by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules. The mediation or arbitration shall take place in the State of New Jersey. If arbitration is selected, the decisions of the arbitrator(s) shall be final and binding on the parties hereto and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The costs of mediation and the costs assessed by the AAA for arbitration shall be borne equally by both parties.

9. <u>LIMITATIONS</u>. This is a services engagement. CTG warrants that it will perform services hereunder in good faith and disclaims all other warranties. Notwithstanding any other provision of this agreement, absent adjudicated gross negligence on the part of CTG, CTG will not be liable for any actions, damages, claims, liabilities, costs, expenses or losses arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by the Client to CTG in performing the services that form the basis for the action or claim. In addition, CTG will not be liable for any delays resulting from circumstances or causes beyond its reasonable control, including without limitation, fire or other casualty, acts of God, strikes or labor disputes, war or other violence, or any law, order or required of any governmental agency or authority.

10. <u>SEVERABILITY</u>. If any portion of this agreement shall be determined to be invalid or unenforceable, CTG and Client agree that the remainder shall be valid and enforceable to the maximum extent possible.

11. <u>NOTICES</u>. All notices required or permitted to be delivered under this agreement shall be in writing and sent, if to CTG, to the address set forth at the head of this letter and, if to Client, to the address set forth above, to the attention of Patrick Cunnane, with copy to Thomas J. Durling, General Counsel, or such other name or address as may be given in writing to the other party. All notices under this agreement shall be sufficient if delivered by overnight mail. Any notice shall be deemed to be given upon actual receipt.



12. <u>ENTIRE AGREEMENT</u>. Client agrees that this agreement represents its entire understanding of the terms of CTG's engagement and that it supersedes any prior understandings or agreements that the parties may have had or discussed. The terms and provisions of this agreement may not be modified or amended except in a writing signed by an authorized representative of the Client and CTG.

If the terms set forth above and within the attached Statement of Work (Appendix A) meet with your approval, please sign and return this proposal to my attention.

Very truly yours,

Joseph Marchese
Partner

Accepted and Acknowledged:

Signed: _____
Name: Mr. Patrick Cunnane
Title: Chief Executive Officer
Date: 10/11/18



### APPENDIX A

### STATEMENT OF WORK

CTG will provide the following services to Client:

### Phase I – Pre-Petition Services:

1.) Assist Client in reviewing cash flow and liquidity and monitor trade support of the business; including a review of the underlying assumptions including, but not limited to: sales, gross margin, inventory productivity, dilution, etc. for reasonableness;
2.) Assist Client by updating the detailed liquidation analysis, completed previously, including assumptions and sources;
3.) Assist Client and their Investment Banker with the development of an ASE reorganization business model;
4.) Assist Client with the development of a general DIP bankruptcy weekly cash flow and related assumptions;
5.) Assist Client with the communication to its Lender, and other constituencies as needed;
6.) Assist Client, if necessary, with preparations for a bankruptcy filing including;
    - the development of financial information and statistical information needed for court motions as requested by Client's Legal Counsel,
    - participation in a DIP loan negotiation,
    - development of communication information for case constituents (employees, landlords, vendors, etc.),
    - other Ch. 11 preparation activities as requested by Client and/or Client's Legal Counsel and agreed by CTG.

### Phase II – Post-Petition Services (if necessary)

1.) Assist Client with post filing communication efforts to various constituencies, including secured creditors, shareholders, unsecured creditors, creditors committee, etc.;
2.) Assist Client with the preparation of the Statement of Financial Affairs;
3.) Assist Client with the sale of assets, auction process, etc., as required;
4.) Attend Court Hearings as required;
5.) Assist Client with the management of the DIP cash flow, variance reporting, etc.;
6.) Assist Client with the preparation of the Monthly Operating Report;
7.) Assist Client with the preparation & development of a reorganization plan if required;
8.) Assist Client with any other services as requested by Client and/or Client's Legal Counsel and agreed by CTG.