## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Advanced Sports Enterprises, Inc., *et al.*,**[1] | ) | Case No. 18-80856 |
| | ) | |
| | ) | (Joint Administration Pending) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER: (I) APPROVING THE SALE OR SALES OF UP TO SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (III) SCHEDULING HEARINGS FOR SUCH RELIEF AND (IV) GRANTING RELATED RELIEF**

Advanced Sports Enterprises, Inc., Advanced Sports, Inc., Performance Direct, Inc.,

Bitech, Inc. and Nashbar Direct, Inc. (collectively, the "Debtors") file this Motion pursuant to

sections 105, 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et

seq. (the "Bankruptcy Code"), for the entry of:

      (A)     an order, substantially in the form attached hereto as Exhibit A (the "Bidding

Procedures Order"), (i) scheduling a hearing (the "Sale Hearing") on approval of one or more

sales of or other acquisition transactions (each a "Sale") of substantially all of the Debtors'

personal property and other related interests, either individually or in groupings  (the "Assets"),

free and clear of all liens, claims, encumbrances, and other interests (collectively, the

---

[1]  The Debtors in this case, along with each Debtor's case number, are: (i) Advanced Sports Enterprises, Inc., Case No. 18-80856; (ii) Advanced Sports, Inc., Case No. 18-80857; (iii) Performance Direct, Inc., Case No. 18-80860; (iv) Bitech, Inc., Case No. 18-80858; and (v) Nashbar Direct, Inc., Case No. 18-80859.  Each Debtor is a North Carolina Corporation.

"Encumbrances"), other than those Encumbrances permitted by the applicable asset purchase agreement or other agreement for the applicable Sale (each a "Transaction Agreement"), including a Sale that may contemplate the acquisition of the Assets of one or more Debtors through a section 363 Sale or a sale of Assets, and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "Assumed Contract," and collectively, the "Assumed Contracts") in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sales in the form attached to the Bidding Procedures Order as Exhibit 1 (collectively, the "Bidding Procedures"), certain proposed assumption and assignment procedures (collectively, the "Assumption and Assignment Procedures"), and the form and manner of notice thereof; and (iii) granting related relief; and

(B)     an order (or orders) (each a "Sale Order")[2], (i) authorizing and approving the Debtors' entry into the Transaction Agreement(s) with Successful Bidder(s), Back-Up Bidder(s), or Stalking Horse Purchaser(s) (each as defined herein), as applicable; (ii) authorizing and approving the Sale of the Assets, free and clear of all Encumbrances other than those permitted by the applicable Transaction Agreement; (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection therewith; and (iv) granting related relief.

In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]   The Debtors will file the applicable form of Sale Order as soon as practicable after such document is negotiated with the applicable purchaser in Consultation with the Official Committee of Unsecured Creditors, if any, and Wells Fargo Bank N.A.

2.     The statutory predicates for the relief requested herein are 28 U.S.C. § 156(c), and Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.     On November 18, 2018 (the "Petition Date"), the Debtors each filed voluntary petitions with the Court under chapter 11 of the Bankruptcy Code.

4.     The factual background relating to the Debtors' commencement of these cases is set forth in detail in the *Declaration of Patrick Cunnane in Support of First Day Motions and Applications* (the "First Day Affidavit") filed on the Petition Date and incorporated herein by reference.

5.     As described on the First Day Affidavit, the Debtors design, manufacture and sell bicycles and related goods and accessories on wholesale and retail basis.  The Debtors also possess valuable IP of various well-known bicycle brands.  The Debtors, with assistance of their investment banker and other professionals, plan to sell up to all of their Assets either all together or separately, depending on the marketplace and interested bidders.

6.      The Debtors' goal is to obtain maximum exposure of their Assets to potential buyers as quickly as possible under the circumstances. The Debtors will consider any transaction that will result in obtaining the highest and best value for their Assets.  Whether such sales consist of the Debtors' inventory, bike intellectual property and brands or any combination thereof.  To that end, the Debtors, along with Wells Fargo Bank, National Association, Debtors' prepetition senior secured lender and proposed postpetition debtor in possession lender ("Wells Fargo" or the "DIP Lender"), have developed the Bidding Procedures to provide potential purchasers with flexibility to propose acquisition transactions.  By keeping multiple transactional

avenues open, the Debtors and their stakeholders can use all of the tools available under the Bankruptcy Code to preserve value at all levels of their capital structure.

7.        In July of 2018, the Debtors retained their investment banker, DA Davidson & Co. ("DA Davidson") to assist them in negotiating with interested parties, preparing for and initiating marketing efforts and facilitating due diligence by various parties.  DA Davidson has been extensively marketing the Debtors' Assets since their engagement and will continue to do so to maximize the value achieved by this sale process.

8.        As part of the negotiations with Wells Fargo over the terms and conditions of the pending debtor-in-possession financing facility (the "DIP Facility"), the Debtors have agreed to several milestones related to the sale of their Assets.

9.        The circumstances of this case dictate an accelerated sales process.  The factors that demand this timeline include the Debtors' cash position and projections, the level of financing required to support the operations, and the current dip in seasonal sales for this retail category.  Given all of the hard work and engaged marketing done and performed by DA Davidson in advance of this filing, the Debtors believe that there are many potential buyers that are eager to submit qualified bids for the Assets here. The Debtors and their professionals believe that the bidding procedures proposed here will yield a spirited auction process that will maximize the sales price obtained herein.

10.        To obtain the best sale process, the Debtors seek the flexibility to name a stalking horse bidder if the circumstances arise. Based on the experience of the Debtors' restructuring professionals, if the appropriate bid package is presented for all of the Assets or any portion thereof, the Debtors seek to preserve the right to designate one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser" and the Transaction Agreement with

such party a "Stalking Horse Agreement") for the sale of the Assets.  As is customary, the

Debtors would like the flexibility to grant a Stalking Horse Purchaser one or more of a limited

break-up fee, expense reimbursement, or other limited bid protections, subject to further Court

approval.  Accordingly, the Debtors are reserving the right to request that the Court approve the

Debtors' selection of a Stalking Horse Purchaser, if applicable, and will provide the Court with

appropriate notice thereof.

## **BIDDING PROCEDURES**[3]

11.     The Debtors intend to solicit bids for all of the Assets, either on the basis of a

single Debtor's Assets or some combination (including all) of the Debtors' Assets, in accordance

with the Bidding Procedures.  The Bidding Procedures describe, among other things, the Assets

available for sale, the manner in which bids become "qualified," the coordination of diligence

efforts among the bidders and the Debtors, the receipt and negotiation of bids received, the

conduct of an auction (an "Auction"), the selection and approval of the Successful Bidder, and

the selection of the Back-Up Bidder.  The Bidding Procedures reflect the Debtors' objective of

conducting the Auction in a controlled, but fair and open, manner, while ensuring that the highest

and best bid is generated for the Assets.

12.     Certain of the key terms of the Bidding Procedures are included below:

(a)     **Qualification as Bidder**: Any person or entity that wishes to
participate in the bidding process for the Assets (each, a "Potential Bidder") must
first become a "Qualifying Bidder." Parties may be qualified as a Qualifying
Bidder up to the Bid Deadline (**i.e., December 14, 2018 at 12:00 p.m. (ET)**), but
parties interested in submitting a bid for any of the Debtors' Assets are
encouraged to qualify as soon as possible because the Bidding Procedures do not

---

[3]   The following is a summary of the Bidding Procedures. It is qualified in its entirety by the actual terms and
conditions of the Bidding Procedures as provided for in the Bidding Procedures Order. To the extent that there is
any conflict between any summary contained herein and the actual terms and conditions of the Bidding Procedures
as provided for in the Bidding Procedures Order, the actual terms and conditions of the Bidding Procedures as
provided for in the Bidding Procedures Order shall control. Capitalized terms used but not defined in this summary
shall have the meanings ascribed to such terms in the Bidding Procedures.

permit any due diligence or financing conditions in Qualifying Bids. Section 2 of the Bidding Procedures identifies the requirements to be deemed a Qualifying Bidder, which include, among other things, (1) entry into a confidentiality agreement in form and substance reasonably satisfactory to the Debtors, and (2) the providing of sufficient information, as determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties,[4] to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction and to provide adequate assurance of future performance as required under section 365 of the Bankruptcy Code. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

Once qualified, Qualifying Bidders will be able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "Data Room").

Notwithstanding anything to the contrary in the Bidding Procedures, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder, and a Stalking Horse Agreement shall be considered a Qualifying Bid (as defined below); and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

(b)      **Due Diligence**: The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: Mike Smith (Phone: 206-903-8679; E-mail MSmith@dadro.com). The due diligence period shall extend through and include the Bid Deadline (as defined below). The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline. The Debtors reserve the right, in their sole discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any limitations provided for in such information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to the Qualifying Bidders, provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any

---

[4]   The term "Consultation Parties" shall mean, with respect to any Debtors' Assets: (i) counsel to the Official Committee of Unsecured Creditors, and members of such Official Committee of Unsecured Creditors, if any and (ii) counsel to Wells Fargo, and representatives from Wells Fargo.

information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

    (c)    **Bid Requirements**:

    i.    *Form of Agreement*. Potential Bidders intending to submit bids must include with their bids:

    a.    a statement that such Potential Bidder offers to purchase the Assets, or a number or combination of the Assets, upon the terms set forth in their Transaction Agreement; provided that, in the event that the Debtors enter into a Stalking Horse Agreement and a Potential Bidder wishes to acquire Assets that are the subject of a Stalking Horse Agreement, such statement shall provide that the Potential Bidder offers to purchase those Assets upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

    b.    a clean and duly executed Transaction Agreement and a marked copy of the Transaction Agreement that reflects any variations from the Stalking Horse Agreement, if applicable, for the Assets that are the subject of the bid; and

    c.    set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder; and

    d.    specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement.

    ii.    *Qualifying Bid*. Other than in the case of a Stalking Horse Purchaser, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the requirements set forth in Section 6 of the Bidding Procedures (each, a "Bid Requirement"). These requirements include, but are not limited to:

    a.    be in writing;

b.      fully disclose the identity of the Qualifying Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors wish to discuss the bid submitted by the Qualifying Bidder;

c.      set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder;

d.      specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

e.      be accompanied by a clean and marked modified Transaction Agreement that reflects any variations from the Stalking Horse Agreement, if there is one for the subject Assets;

f.      state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder (both as defined below) in which case such offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale of the subject Assets;

g.      state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Transaction Agreement and provide written evidence in support thereof;

h.      contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are to be assumed and assigned to

8

the Qualifying Bidder, in a form that allows the Debtors to make available, within one (1) business day after such receipt, such information to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information ("Counterparties");

i.      identify with particularity each and every executory contract, unexpired lease and unexpired sublease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

j.      include a commitment to close the transactions contemplated by the Transaction Agreement promptly upon entry of the order approving the sale;

k.      not request or entitle such Qualifying Bidder (other than a Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

1.      in the event that there is a Stalking Horse Purchaser, and the Qualifying Bidder wishes to bid on the same Assets that are included in the Stalking Horse Agreement, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, plus (B) any break-up fee, expense reimbursement, or other bid protection provided under the Stalking Horse Agreement, plus (C) $100,000;

m.      not contain any contingencies of any kind, including, without limitation, contingencies related to financing, due diligence, or third party regulatory or internal approval;

n.      contain written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement;

o.      contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by

9

operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

p.      provides for the Qualifying Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest and best bid (the "Back-Up Bid") after the Successful Bid (as defined below), in accordance with the terms of the Transaction Agreement;

q.      includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

r.      provides a good faith cash deposit (the "Deposit") in an amount equal to ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; and

s.      provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

iii.    *Credit Bidding.* Any party that wishes to submit a credit bid either as a component, or as the entirety, of the consideration for its bid shall identify the amount of the claim and the nature, extent, and priority of the lien upon which its credit bid is premised. Except where the Debtors have stipulated to the amount of a senior secured claim in a DIP financing and/or "cash collateral" order entered by the Court, any party submitting a

credit bid agrees to provide the Debtors with documentation to evidence the amount, nature, extent, validity and perfection of such claim and lien to the extent it has not already done so.

Wells Fargo shall have the right to credit bid up to the full amount of all Obligations and any Existing Liabilities then outstanding as and to the extent set forth in the DIP Credit Agreement approved pursuant to the DIP Order.

iv.      *Final Bid Deadline*. A Qualifying Bidder, other than a Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors so as to be received on or before **December 14, 2018 at 12:00 p.m. (ET)** (the "Bid Deadline"); provided that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties. Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.

v.      *Evaluation of Qualifying Bids*. The Debtors will deliver, within one (1) business day after receipt thereof, copies of all bids from Qualifying Bidders to the Consultation Parties.  The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid, and shall notify each Qualifying Bidder as to whether its bid has been determined to be a Qualifying Bid by no later than two (2) days prior to the Auction Date. In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and shall have one (1) day from the date of such notification to modify its bid so as to become a Qualifying Bid; provided that any Qualifying Bid may be improved at the Auction as set forth in the Bidding Procedures.

vi.      *Baseline Bid*. Prior to the commencement of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder"), and shall promptly notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid. The Baseline Bid may be comprised of any combination of the Assets, and the Debtors may determine that different Baseline Bids exist for different groupings of the Assets. The Debtors shall have the discretion to determine how to proceed when auctioning the Assets in groupings that do not include all of Debtors' Assets so as to maximize the value of the Assets.

vii.    *No Qualifying Bids*. If no timely Qualifying Bids other than any Stalking Horse Purchaser's or Purchasers' Qualifying Bid(s) are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall have the right to request at the Sale Hearing (as defined in the Bidding Procedures Order) that the Court approve the Stalking Horse Agreement or Agreements and the transactions contemplated thereunder.

(d)    *Auction*: In the event that the Debtors timely receive one or more Qualifying Bids other than any Stalking Horse Purchaser's Qualifying Bid, the Debtors shall conduct the Auction. Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest and best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for Assets when sold individually or in combination with one or more of the Debtors' other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured indebtedness, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

i.    the Auction shall be held on **December 18, 2018 at 10:00 a.m. (ET)** (the "Auction Date") at a location to be determined by the Debtors;

ii.    only a Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (together, the "Auction Bidders") shall be entitled to make any subsequent bids at the Auction;

12

iii.     the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative;

iv.     only the Debtors, the Auction Bidders, the Consultation Parties, and the Bankruptcy Administrator, together with the professional advisors to each of the foregoing parties, may attend the Auction;

v.     the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

vi.     the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction or the Sale;

vii.     bidding on any lot of Assets shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least $100,000 of the Baseline Bid, provided that: (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protections available to such Stalking Horse Purchaser; (iii) any bid made by any Stalking Horse Purchaser, including in each and every round of bidding, shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protection available to such Stalking Horse Purchaser in addition to the cash and other consideration provided for in its bid; and (iv) the Debtors shall retain the right to modify the bid increment requirements at the Auction;

viii.     the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

ix.     all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

x.     the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including,

13

without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

xi.    each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

xii.    the Auction Bidders shall have the right to make additional modifications to their Transaction Agreement or Stalking Horse Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of any Stalking Horse Agreement for the Assets that are the subject of the bids, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for in the Bidding Procedures;

xiii.    the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination, in consultation with the Consultation Parties, as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Transaction Agreement or any Stalking Horse Agreement, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

xiv.    upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is or are the highest and best from among the Qualifying Bids submitted at the Auction (the "Successful Bid"). The bidder submitting such Successful Bid shall

14

become the "Successful Bidder," and shall have such rights and responsibilities of the purchaser as set forth in the Transaction Agreement or any Stalking Horse Agreement. The Debtors may, in their sole discretion, designate a Back-Up Bid or Bids (and the corresponding Back-Up Bidder or Bidders) to purchase the Assets in the event that a Successful Bidder does not close a Sale; and

        xv.     prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUCCESSFUL BID AND ANY BACK-UP BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL THE TIME PERIOD SPECIFIED IN SECTION 6(D) OF THE BIDDING PROCEDURES. EACH QUALIFYING BID THAT IS NOT THE SUCCESSFUL BID OR THE BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

(e)    **Sale Hearing**: The Successful Bid (which, if no Auction is held, may be the Stalking Horse Agreement) and any Back-Up Bid will be subject to approval by the Court. The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on **December 19, 2018**, as the Schedule of the Bankruptcy Court may allow. The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' Chapter 11 Cases.

(f)    **Backup Bidder**: Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close within five (5) days after the Court enters an order approving the Successful Bid (or such date as may be extended by the Debtors in consultation with the Consultation Parties), the Back-Up Bid for that Sale will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors will be authorized, but not directed, to immediately close that Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

(g)    **Return of Deposits**: All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or Back-Up Bidder for any Sale no later than three (3) business days following the conclusion of the Sale Hearing. The deposit of a Back-Up Bidder shall be returned within three (3)

business days of the closing of the applicable Sale to the Successful Bidder; the deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as liquidated damages resulting to the Debtors and their estates for such breach or failure to perform.

(h)     **Reservation of Rights**. Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn or cancel the Sale Hearing. Additionally, the Debtors, in consultation with the Consultation Parties, have the right to terminate the sale and auction process with respect to any or all of the Assets at any time.

### NOTICE PROCEDURES FOR THE SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

13.     The Debtors also request approval of the sale notice (the "Sale Notice"), substantially in the form attached to the Bidding Procedures Order as Exhibit 2. Within two (2) business days after the entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail on: (1) the Office of the Bankruptcy Administrator; (2) counsel to the Official Committee of Unsecured Creditors, if any; (3) counsel to Wells Fargo, Debtors' prepetition and proposed postpetition secured lender, Riemer & Braunstein LLP, One Center Plaza, Suite 600, Boston, MA 02108 (Attn: Donald E. Rothman, Esq.); Email: drothman@riemerlaw.com; and Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036 (Attn: Steven E. Fox, Esq.), Email: sfox@riemerlaw.com; (4) all parties known by the Debtors to assert a lien on any of the Assets; (5) all persons known to have asserted an

interest in any of the Assets; (6) all non-Debtor parties to any of the Assumed Contracts; (7) all persons known to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve (12) months prior to the Petition Date; and (8) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service. In addition, the Debtors will serve the Sale Notice on all of the Debtors' known creditors, investors, and equity holders (for whom identifying information and addresses are available to the Debtors).

14.     The Debtors will also post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

15.     To facilitate the Sale, the Debtors seek authority to potentially assume and assign to any acquirer in a Sale the Assumed Contracts in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures are detailed in the Bidding Procedures Order, and they include the following:

- The identification of contracts that could potentially be assumed or assumed and assigned and the proposed Cure Amount.

- Service of an assumption notice, substantially in the form attached hereto as Exhibit 3.

- The provision of at least ten (10) days for Counterparties to the Assumed Contracts to object to the Debtors' ability to assume and/or assign the contract and proposed Cure Amount, excluding adequate assurance of future performance of the applicable Debtor or assignee.

- The condition that failure to timely object to the proposed assumption, assignment (if applicable), Cure Amount and adequate assurance of future performance will result in the Counterparty being deemed to consent to the proposed assumption or assumption and assignment and Cure Amount.

## RELIEF REQUESTED

16.     By this Motion, the Debtors seek entry of: (a) the Bidding Procedures Order, (i) scheduling a date for the Sale Hearing, (ii) authorizing and approving the Bidding Procedures and the Assumption and Assignment Procedures, and the form and manner of notice thereof, and (iii) granting related relief; and (b) one or more Sale Orders, (i) authorizing and approving the Debtors' entry into the Transaction Agreement(s) with Successful Bidder(s) or Back-Up Bidder(s), as applicable, (ii) authorizing and approving the Sale(s), free and clear of all Encumbrances, (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection with such Sale(s); and (iv) granting related relief.

17.     The Bidding Procedures Order, if approved, will establish the following timeline (all times in ET), which the Debtors believe is appropriate to arrive at a value maximizing transaction:

| Milestones | Proposed Dates |
|---|---|
| Bidding Procedures Hearing | **November 28, 2018** |
| Deadline to serve Sale Notice, including to potential purchasers by first class mail | **November 30, 2018** |
| Deadline to serve Assumption Notice | **November 30, 2018** |
| Deadline to object to Assumption Notice (other than adequate assurance) | **December 13, 2018 at 4:00 p.m.** |
| Deadline to object to Sale (other than with respect to assumption and assignment) | **December 13, 2018 at 4:00 p.m.** |
| Bid Deadline | **December 14, 2018 at 12:00 p.m.** |
| Auction commence | **December 18, 2018 at 10:00 a.m.** |
| Deadline to object to adequate assurance | **At Sale Hearing** |
| Deadline to Object to Conduct of Auction | **At Sale Hearing** |
| Sale Hearing | **December 19, 2018** |
| Outside Closing Date | **December 21, 2018** |

18.     The Debtors respectfully submit that the timeline set forth in the Bidding Procedures is reasonable and necessary under the circumstances of these cases. Such timeline will allow parties in interest sufficient time to formulate bids. Further, the proposed timeline for the sale and marketing process has been heavily negotiated with the DIP Agent and satisfying the milestones herein will avoid the Debtors defaulting under the DIP Facility.

19.     Finally, the Debtors will also promptly make the disclosures required under Bankruptcy Rules 6004 and Local Rule 6004-1(b) with respect to any definitive Transaction Agreement the Debtors enter into, including any Stalking Horse Agreement.

## **BASIS FOR RELIEF**

A.     **Sufficient Business Justification Exists for Consummation of the Sale Under Bankruptcy Code Sections 105(a) and 363(b)**

20.     Pursuant to section 105(a) of the Bankruptcy Code, a "[c]ourt may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Ahhotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147-48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of In re Lionel Corp.); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in Abbotts Dairies); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) (same).

21.     The demonstration of a valid business justification by the debtor leads to a strong presumption "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

22.     The Debtors submit that their decision to market and sell their Assets, through the section 363 sale process described herein, represents a reasonable exercise of the Debtors'

business judgment and, accordingly, the Sale should be approved under sections 105(a) and 363(b) of the Bankruptcy Code. As discussed above and in the First Day Affidavit, as a result of lacking capital and decreases in the Debtors' net earnings and cash flow, among other reasons, the Debtors are unable to continue as a going concern under their existing capital structure, thereby necessitating a comprehensive restructuring of the Debtors and their assets. The Debtors submit that a sale of their Assets will effectuate this necessary change.

23.     The Debtors must now seek to obtain the highest and best value for their Assets so that they can unlock and distribute to their stakeholders the value inherent in the Assets. The Debtors are committed to considering all rational and viable proposals in search of that goal. The open and fair auction and sale process contemplated by the Bidding Procedures will ensure that the Debtors' estates receive the highest and best value available for the Assets by allowing the market to set the purchase price of the Assets (or test any purchase price that may be agreed to under a Stalking Horse Agreement). Furthermore, compliance with the Bidding Procedures will ensure the fairness and reasonableness of the consideration to be paid by any Successful Bidder and establish that the Debtors and the Successful Bidder have proceeded in good faith.

24.     Additionally, the Debtors believe that the notice procedures described above are reasonable and adequate under the circumstances. Bankruptcy Rules 2002(a) and (c) require the Debtors to notify creditors of the Sale, the terms and conditions of the Sale, the time and place of the Auction, and the deadline for filing any objections. The Debtors believe that the proposed notice procedures fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sale, Bidding Procedures, Auction, and Sale Hearing to the Debtors' creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Assets.

25.     The Sale conducted in accordance with the Bidding Procedures will generate significant value for the Debtors' estates and represents the best path forward for maximizing recoveries to such estates, the Debtors' creditors, and all parties in interest. The Debtors submit that ample business justification exists for the consummation of the Sale and, therefore, request that this Court approve the Sale.

**B.      The Sale of the Assets Free and Clear of All Encumbrances Is Authorized Under Bankruptcy Code Section 363(f)**

26.     Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

27.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); see also Mich. Emp 't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); In re Bygaph, Inc., 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same).

Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. <u>See In re Trans World Airlines, Inc.</u>, 322 F.3d 283, 289 (3d Cir. 2003).

28.     The Debtors submit that, in the interest of attracting the best offers, it is appropriate to sell their Assets free and clear of any and all Encumbrances (except as otherwise expressly set forth in the Sale Order and a Stalking Horse Agreement or Transaction Agreement with a Successful Bidder, as applicable) in accordance with section 363(f) of the Bankruptcy Code, because one or more of the tests of section 363(f) are, or will be, satisfied with respect to any Sale. In particular, the Debtors believe that section 363(f)(2) of the Bankruptcy Code will be met, because the Debtors' prepetition secured lenders and postpetition lenders are secured by, among other things, the Assets and such proceeds will be paid to Wells Fargo at closing of the Sale, subject to any requirement imposed under the DIP Order with respect to the payment of proceeds of the Sale. Indeed, implementation of the sale process has been supported by the Wells Fargo and is required by the DIP Facility to which they have consented.

29.     The Debtors further anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f). The Debtors will serve the Sale Notice on all parties known to assert a lien, claim, or encumbrance against the Assets, so lienholders will receive notice and will be given sufficient opportunity to object to the relief requested. Lienholders that are on notice of, and do not object to, a Sale should be deemed to have consented to that Sale. <u>See, e.g.</u>, <u>FutureSource LLC v. Reuters Ltd.</u>, 312 F.3d 281, 285-86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); <u>Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)</u>, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that

creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); In re Elliot, 94 B.R. at 345 (same). In the event of an objection from a secured creditor to the Debtors' requested section 363(f) finding, the Debtors reserve the right to demonstrate that the other provisions of section 363(f) have been satisfied.

**C.    The Sale Should Be Subject to the Protections of Section 363(m)**

30.    Section 363(m) of the Bankruptcy Code provides, in part, that the reversal or modification on appeal of an authorization of a sale pursuant to section 363(b) or section 363(c) of the Bankruptcy Code does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). In approving the Sale free and clear of Encumbrances, the Debtors request that the Court find and hold that all purchasers of Assets purchased in accordance with the Bidding Procedures are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in that selection of the Successful Bidder will be the result of a competitive bidding process and arm's-length, good-faith negotiations, and parties in interest will have the opportunity to review and object to a proposed transaction. See Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.), 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders).

**D.    The Court Should Approve the Bidding Procedures**

31.    The key objective in any sale of property of a debtor's estate is to maximize the value received by the estate. See In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor "had a fiduciary duty to protect and maximize the estate's assets"); Official

Comm. of Unsecured Creditors of Cybergenics, Corp v. Chinery, 330 F.3d 548, 573 (3d Cir.2003) (same). Procedures used to enhance competitive bidding support this objective and, therefore, are appropriate in the context of bankruptcy sales. See In re O'Brien Envil. Energy, Inc., 181 F.3d 527, 537 (3d Cir. 1999); see also Integrated Res. Inc., 147 B.R. at 659 (stating that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets").

32.     The Debtors have designed the Bidding Procedures to promote a competitive and fair bidding process and, thus, to maximize value for the Debtors' estates and creditors. The Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that the Debtors will receive the highest and best possible consideration for the Assets. Furthermore, the Bidding Procedures provide an appropriate framework for the Debtors to review, analyze and compare any bids received in order to determine which bids are in the best interests of the Debtors' estates and their creditors. The Debtors submit that this timetable is fair and reasonable in light of the Debtors' current circumstances.

33.     The Debtors submit that the forgoing procedures are fair and transparent and will derive the highest and best bids for the Assets. Therefore, the Debtors request that the Court approve the Bidding Procedures, including the dates established thereby for the Auction and the Sale Hearing.

## E.     **The Assumption and Assignment of the Assumed Contracts in Connection with the Sale Satisfies Bankruptcy Code Section 365**

34.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." See 11 U.S.C. § 365(a). Courts have held that "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or

debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 COLLIER ON BANKRUPTCY ¶ 365.01[1] (15th ed. 1993)).

35.     As set forth above, the Sales should provide significant benefits to the Debtors' estates and maximize the value of the Assets. To that end, permitting the Debtors to assume and assign the Assumed Contracts should provide the Debtors with flexibility to enter into a transaction that will obtain the greatest benefits from any Sale. In addition, under section 365(k) of the Bankruptcy Code, the assignment by a debtor to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." See 11 U.S.C. § 365(k). Thus, following an assignment of any Assumed Contract, the Debtors will be relieved from any liability for any subsequent breach associated therewith.

36.     Furthermore, section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Assumed Contracts must be cured or that adequate assurance be provided that such defaults will be promptly cured. See 11 U.S.C. § 365(b)(1). The Debtors propose to file with this Court and serve on each Counterparty to an Assumed Contract an Assumption Notice that indicates the proposed Cure Amount for each such contract. As such, each Counterparty will have the opportunity to object to the proposed assumption and assignment to the Successful Bidder and to the proposed Cure Amount, if applicable. Moreover, the payment or reserve of the applicable Cure Amount will be a condition to the Debtors' assumption and assignment of any Assumed Contract.

37.     Relatedly, section 365(f)(2) of the Bankruptcy Code provides that a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2). The words "adequate assurance of future performance" must be given a "practical, pragmatic construction" in light of the facts and circumstances of the proposed assumption. See In re Fleming Cos., Inc., 499 F.3d 300, 307 (3d Cir. 2007) (internal citation omitted); Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (same); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (finding that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and profit); In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

38.     Specifically, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of future performance is given where assignee of lease has financial resources and expresses willingness to devote sufficient funding to the business to ensure its success, and that in the leasing context, chief determinant of adequate assurance is whether rent will be paid).

39.     Here, the Successful Bidder will have provided adequate assurance of future performance with respect to any Assumed Contract. In order for its bid to be deemed a Qualifying Bid, each Qualifying Bidder will be required to provide evidence supporting its ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "Adequate Assurance Information"),

including: (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity. To the extent available, the Adequate Assurance Information may also include: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns and annual reports. Furthermore, given that the Debtors and/or Successful Bidder(s) will have the opportunity to submit evidence that they have satisfied all requirements for the assumption and assignment of the Assumed Contracts at the Sale Hearing, the Court and other interested parties will have the opportunity to evaluate the ability of each Successful Bidder to provide adequate assurance of future performance.[5]

40.    Therefore, the Debtors respectfully request that the Court (a) approve the proposed assumption and/or assumption and assignment of the Assumed Contracts, and (b) find that all anti-assignment provisions of such contracts to be unenforceable under section 365(f) of the Bankruptcy Code.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h) AND 6006(d)

41.    Pursuant to Bankruptcy Rule 6004(h), "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Furthermore, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory

---

[5]  The Debtors shall also provide the Adequate Assurance Information to any Counterparty that submits a written request to receive the Adequate Assurance Information by email that specifically identifies the Assets for which such Counterparty would like to receive Adequate Assurance Information in accordance with the terms of the Bidding Procedure Order, and agrees to be bound by the confidentiality provisions set forth in the Bidding Procedures Order.

contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

42.     As set forth throughout this Motion, any delay in the Debtors' ability to consummate the Sale would be detrimental to the Debtors, their creditors and estates, and would impair the Debtors' ability to take advantage of the substantial cost-savings that can be achieved by an expeditious closing of the Sale.

43.     For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) and 6006(d), to the extent applicable.

## NOTICE

44.     The Debtors shall provide notice of this Motion upon the Master Service List as proposed in the Debtors' Emergency Motion for an Order Establishing Notice and Administrative Procedures, and file a certificate of service reflecting the same.

## NO PRIOR REQUEST

45.     The Debtors have not previously sought the relief requested herein from this or any other Court.

*[remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Bidding Procedures Order granting the

relief requested herein and such other and further relief as is just and proper.

Dated: November 16, 2018

**NORTHEN BLUE LLP**

/s/ John A. Northen
John A. Northen
North Carolina State Bar No. 6789
jan@nbfirm.com
Vicki L. Parrott
North Carolina State Bar No. 25449
vlp@nbfirm.com
John Paul H. Cournoyer
North Carolina State Bar No. 42224
jpc@nbfirm.com
1414 Raleigh Road, Suite 435
Chapel Hill, North Carolina 27517
Telephone:  (919) 968-4441

PROPOSED COUNSEL FOR THE
DEBTORS-IN-POSSESSION

**FLASTER/GREENBERG P.C.**
William J. Burnett (PA Bar No. 75975)
(*pro hac* application pending)
Harry J. Giacometti (PA Bar No. 55861)
(*pro hac* application pending)
Damien Nicholas Tancredi (PA Bar No. 308317)
(*pro hac* application pending)
1835 Market Street, Suite 1050
Philadelphia, PA 19103
(215) 279-9383 Telephone
(215) 279-9394 Facsimile
william.burnett@flastergreenberg.com

# **EXHIBIT A**

**Proposed Bidding Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Advanced Sports Enterprises, Inc.,** *et al.*,[6] | ) | **Case No. 18-80856** |
| | ) | |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| Debtors. | ) | |
| | ) | |

**ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE
OR SALES OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES,
ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER
OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[7], dated November 16, 2018, of the

Debtors in the above-captioned chapter 11 cases for the entry of:

---

[6]  The Debtors in this case, along with each Debtor's case number, are: (i) Advanced Sports Enterprises, Inc., Case
No. 18-80856; (ii) Advanced Sports, Inc., Case No. 18-80857; (iii) Performance Direct, Inc., Case No. 18-80860;
(iv) Bitech, Inc., Case No. 18-80858; and (v) Nashbar Direct, Inc., Case No. 18-80859.  Each Debtor is a North
Carolina Corporation.

[7]  Capitalized terms used but not defined herein shall have the meanings given in the Motion or the Bidding
Procedures (as defined below), as applicable.

(A)        an order, (i) scheduling a hearing (the **"Sale Hearing"**) on approval of one or more sales of or other acquisition transactions for (each a **"Sale"**) of substantially all of the Debtors' personal property and other related interests (the **"Assets"**)**,** either individually or in lots, free and clear of all liens, claims, encumbrances, and other interests (collectively, the **"Encumbrances"**)**,** other than those Encumbrances permitted by the applicable asset purchase agreement or other agreement for the applicable Sale (each a **"Transaction Agreement"**)**,** and a Sale that may include the acquisition of the equity of one or more Debtors though a section 363 Sale, and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an **"Assumed Contract,"** and collectively, the **"Assumed Contracts"**) in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sales in the form attached as **Exhibit 1** (collectively, the **"Bidding Procedures"**)**,** certain proposed assumption and assignment procedures (collectively, the **"Assumption and Assignment Procedures"**)**,** and the form and manner of notice thereof; and (iii) granting related relief; and

(B)        an order (or orders) (each a **"Sale Order"**)**,**[8] (i) authorizing and approving the Debtors' entry into the Transaction Agreement(s) with Successful Bidder(s) (which may be the Stalking Horse Purchaser) or Back-Up Bidder(s), as applicable; (ii) authorizing and approving the Sale of Assets, free and clear of all Encumbrances other than those permitted by the applicable Transaction Agreement; (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection therewith; and (iv) granting related relief;

and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice need be provided; and the Bidding Procedures Hearing (as defined below) having been held; and all of the proceedings had before the Court;

---

[8] The Debtors shall file the applicable form(s) of Sale Order as soon as practicable after such document is negotiated with the applicable purchaser(s) in consultation with the Official Committee of Unsecured Creditors and Wells Fargo Bank, N.A.

and the Court having reviewed the Motion; and the Court having found and determined that the relief sought in the Motion and set forth herein is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:[9]**

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.      In the Motion and at the hearing on the Motion (the "Bidding Procedures Hearing"), the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.      The Sale Notice (as defined below) is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures,

---

[9] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such

the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F.      The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the Sale,

G.      The Assumption and Assignment Procedures provided for herein and in the Assumption Notice (as defined below) are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections (as defined in the Assumption and Assignment Procedures).

H.      Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Those portions of the Motion seeking approval of (a) the Assumption and Assignment Procedures, (b) the Bidding Procedures, (c) the date, time and place of the Auction and Sale Hearing, and (d) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Sale Notice, substantially in the form attached hereto as Exhibit 2 (the "Sale Notice"), and the Assumption Notice, substantially in the form attached hereto as Exhibit 3 (the "Assumption Notice"), are hereby GRANTED as provided herein.

2.      Any objections to the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**Approval of Bidding Procedures; Auction**

3.      The Bidding Procedures are hereby approved. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order. The Debtors are hereby authorized to conduct the Auction of the Assets pursuant to the terms of the Bidding Procedures and this Order. The Bidding Procedures shall govern the actions of the Potential Bidders and the Qualifying Bidders (each as defined in the Bidding Procedures), as well as the conduct of the Auction.

4.      Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders or Qualifying Bidders, provided that such Potential Bidders or Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders or Qualifying Bidders in connection with the Bidding Procedures and the Sale, provided that the information was provided in accordance with this Order and except as otherwise provided for in a Transaction Agreement that is authorized and approved by the Court.

5.      For the avoidance of doubt, and notwithstanding anything to the contrary in the Motion, this Order or the Bidding Procedures, the requirement that a party execute a confidentiality agreement to obtain access to the Data Room and other due diligence information shall not restrict, prohibit or alter the right that any party has under any applicable agreement, including loan agreements, to receive, or the Debtors' obligation to provide, any information,

which rights and obligations are intended to remain unchanged by this Order and the Bidding
Procedures.

6.      A Qualifying Bidder that desires to make a bid shall deliver a written and
electronic copy of its bid in both PDF and MS-WORD format to the Debtors, with a copy to the
Consultation Parties (as defined below) so as to be received on or before December 14, 2018 at
12:00 p.m. (ET) (the "Bid Deadline"); provided that the Debtors may extend the Bid Deadline
without further order of the Court, after consulting with the applicable Consultation Parties. Any
party that does not submit a bid by the Bid Deadline will not be allowed to: (a) submit any offer
after the Bid Deadline or (b) participate as a bidder in the Auction. The term "Consultation
Parties" as used in the Bidding Procedures and this Order shall mean, with respect to any
Debtors' Assets: (i) counsel to the Official Committee of Unsecured Creditors, and members of
such Official Committee of Unsecured Creditors, if any and (ii) counsel to Wells Fargo, and
representatives from Wells Fargo.

7.      All Qualifying Bidders submitting a Qualifying Bid are deemed to have submitted
to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and
the terms and conditions of the sale or transfer of the Assets identified under the Transaction
Agreement.

8.      In the event that the Debtors timely receive two or more Qualifying Bids for the
same Assets, the Debtors shall include such Assets in the Auction. If there is only one Qualifying
Bid submitted for a particular Asset or set of Assets on or before the Bid Deadline, the Debtors
may not include such Asset or Assets in the Auction and, instead, may request at the Sale
Hearing that this Court approve the Qualifying Bid (if any) applicable to such Assets and the

transactions contemplated thereunder. If there are no Assets for which at least two Qualifying Bids have been timely submitted, the Auction will be cancelled.

9.      The Auction shall be held at the offices of Northen Blue, LLP, 1414 Raleigh Road #435; Chapel Hill, NC 27517, beginning at 10:00 a.m. (prevailing Eastern Time) on December 19, 2018. Each Auction Bidder (as defined in the Bidding Procedures) shall confirm in writing that: (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction and (b) its Qualifying Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder. All proceedings at the Auction shall be transcribed.

10.      All Assets shall be offered individually and in groupings at the Auction. The Debtors shall have the ability to determine the order in which the Assets will be subjected to bidding during the Auction and what Asset or Assets will be auctioned either individually or in each grouping. The Debtors shall announce which Asset or Assets will be in the first grouping and which bid is the Baseline Bid (as defined in the Auction and Bidding Procedures), which may include the aggregation of a combination of Qualifying Bids of separate Qualifying Bidders. The applicable Debtors, in consultation with the Consultation Parties, shall assess each bid to determine whether it is the highest and best bid for an Asset or Assets, considering, among other things: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to

38

the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant, all in consultation with the Consultation Parties.

11.     The Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders;[10] (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is a Baseline Bid (as defined in the Bidding Procedures) in consultation with the Consultation Parties, (d) permit Qualifying Bidders to bid on less than all of the Assets that were included in their Qualifying Bid, if applicable; (e) subject to the terms of the Bidding Procedures, determine which bids are the Successful Bid and Back-Up Bid, each as it relates to the Auction; (f) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (g) adjourn or cancel an Auction and/or the Sale Hearing in open court without further notice or as provided in this Order

---

[10]  For the avoidance of doubt, any party entitled to submit a credit bid that submits such a bid shall be deemed a Qualifying Bidder.

and in the Bidding Procedures; (h) modify the Bidding Procedures consistent with their fiduciary duties and the Bankruptcy Code; and (i) withdraw the Motion with respect to entry of the Sale Order for any Assets at any time with or without prejudice, all in consultation with the Consultation Parties.

## Assumption and Assignment Procedures; Contract Objections

12. The following "Assumption and Assignment Procedures" are hereby approved:

(a)     On or before November 30, 2018 (the "Assumption Notice Deadline"), the Debtors shall file with the Court and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to an Assumed Contract an assumption notice (an "Assumption Notice"). In the event that the Debtors identify any Assumed Contract that a potential purchaser may potentially seek to acquire by assumption or assumption and assignment or modify the Cure Amount (as defined herein) after the Assumption Notice Deadline, the Debtors shall promptly file a supplemental Assumption Notice (a "Supplemental Assumption Notice").

(b)     The Assumption Notice (or Supplemental Assumption Notice, if applicable) shall include, without limitation, the cure amount (each, a "Cure Amount"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts. If a Counterparty objects to (i) the Debtors' ability to assume and/or assign the Assumed Contract or (ii) the Cure Amount for its Assumed Contract through the Contract Objection Deadline (as defined below), the Counterparty must file with the Court and serve on the counsel to the Debtors and the Consultation Parties a written objection (a "Contract Objection").

(c)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) be filed with the Clerk of the Court, U.S. Bankruptcy Court, Middle District of North Carolina, 101 S. Edgeworth St., Greensboro, NC 27401, together with proof of service, on or before 4:00 p.m. (ET) on December 13, 2018 (the "Contract Objection Deadline"), provided that if the Debtors file any Supplemental Assumption Notice, such notice shall provide that the Contract Objection Deadline shall be at least 10 days after service of such notice; (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the counsel to the Debtors and the Consultation Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and

40

the conditions giving rise thereto. Any objections to adequate assurance of future performance by a Successful Bidder shall be filed in accordance with this Order.

(d)  Upon the conclusion or cancellation of the Auction, the Debtors shall file with the Court one or more notices identifying the Successful Bidder or Successful Bidders for the Assets (a "Notice of Successful Bidder"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (as defined in the Bidding Procedures), if any, (ii) the Assumed Contracts included in the Successful Bid or Back-Up Bid (as defined in the Bidding Procedures); (iii) the proposed assignee(s) of such Assumed Contracts; and (iv) instructions for contacting the Successful Bidder to obtain Adequate Assurance Information, which shall be provided to each affected Counterparty on a confidential basis; provided that if the Auction is cancelled and the Debtors choose to proceed with a transaction with one or more Stalking Horse Purchasers, the Notice of Successful Bidder shall set forth such information for the Stalking Horse Purchaser(s), as the Successful Bidder.

(e)  Upon the conclusion or cancellation of the Auction, the Debtors will cause to be served by overnight mail upon each affected Counterparty and Consultation Party, as well as the Sale Notice Parties and parties requesting notice in these cases under Bankruptcy Rule 2002, the applicable Notice of Successful Bidder. Counterparties may submit objections solely on the basis of adequate assurance of future performance by a Successful Bidder at the Sale Hearing.

(f)  If no Contract Objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Debtors and (if applicable) assignment of such Assumed Contract, and will be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance); (ii) upon receipt by the Counterparty of any Cure Amount, any and all defaults under such Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount included in the Assumption Notice or Supplemental Assumption Notice, if applicable, for such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors and (if applicable) the Debtors' assignee, or the property of any of them, that existed prior to the entry of the Sale Order.

(g)  To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the

Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be mutually agreed to by the Debtors and the objecting Counterparty or scheduled by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, such Assumed Contract may be assumed by the Debtors and assigned, provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in

13.     The Debtors shall not be required to accept bids for the assumption and assignment of individual leases but are authorized, but not directed, to accept bids from landlords to individual leases to which such landlord is a party.

14.     As part of its bid, each Qualifying Bidder (including any Stalking Horse Purchaser) must make available, for review by the Consultation Parties and Counterparties to Assumed Contracts of which such Qualified Bidder may seek to take assignment, information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "Adequate Assurance Information"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity. To the extent available, the Adequate Assurance Information shall also include, to the extent requested: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns and annual reports. Adequate Assurance Information shall be provided on a confidential basis and must be kept confidential and shall only be used and disclosed as agreed to by the Qualifying Bidder that provided such Adequate Assurance Information or as ordered by the Court. This Order authorizes the filing of any Adequate Assurance Information under seal, and

on the docket with such non-public information redacted, without further order of the Court; provided that unredacted versions of such pleadings shall be served upon the Debtors, with a copy to the Court's chambers. Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

15.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

16.     The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors, their estates, or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

**Sale Hearing and Objections to the Sale**

17.     The Sale Hearing shall be held in this Court on December 19, 2018 at 10:00 a.m. (ET), unless otherwise determined by this Court. The Debtors may adjourn or reschedule the Sale Hearing without notice or with limited and shortened notice to parties, including by: (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

18.     Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of the Court, U.S. Bankruptcy Court, Middle District of North Carolina, 101 S.

Edgeworth St., Greensboro, NC 27401, together with proof of service, on or before 4:00 p.m. (ET) on December 13, 2018 (the "Sale Objection Deadline"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the counsel to the Debtors and the Consultation Parties; provided that solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "Auction Objection"), the deadline to file an Auction Objection shall be prior to the commencement of the Sale Hearing (the "Auction Objection Deadline"). If a Sale Objection or Auction Objection is not filed and served on or before the Sale Objection Deadline or Auction Objection Deadline, as applicable, in accordance with the foregoing requirements, an objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

19.     Failure to file a Sale Objection on or before the Sale Objection Deadline and failure to file an Auction Objection on or before the Auction Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by a Stalking Horse Agreement or any Transaction Agreement with a Successful Bidder or Back-Up Bidder, and (b) for purposes of section 363(f) of the Bankruptcy Code, shall constitute "consent" to the entry of the Sale Order and consummation of the Sale and all transactions related thereto.

20.     The Debtors shall have until commencement of the Sale Hearing to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection, Auction Objection, or Contract Objection.

**Form and Manner of Notice of Sale Hearing**

21.     The Sale Notice, the Assumption Notice, the Notice of Successful Bidder, the Bidding Procedures, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide sufficient and effective notice to any affected party and to afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, Sale, Sale Hearing, and the assumption and assignment of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notices and objection periods are hereby approved.

22.     Within two (2) business days after the entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail on: (1) the Office of the Bankruptcy Administrator; (2) counsel to the Official Committee of Unsecured Creditors, if any; (3) counsel to Wells Fargo, Debtors' prepetition and proposed postpetition secured lender, Riemer & Braunstein LLP, One Center Plaza, Suite 600, Boston, MA 02108 (Attn: Donald E. Rothman, Esq.); Email: drothman@riemerlaw.com; and Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036 (Attn: Steven E. Fox, Esq.), Email: sfox@riemerlaw.com; (4) all parties known by the Debtors to assert a lien on any of the Assets; (5) all persons known to have asserted an interest in any of the Assets; (6) all non-Debtor parties to any of the Assumed Contracts; (7) all persons known to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve (12) months prior to the Petition Date; and (8) all other parties that had filed a notice of appearance and

demand for service of papers in these chapter 11 cases as of the date of service. In addition, the Debtors will serve the Sale Notice on all of the Debtors' known creditors, investors, and equity holders (for whom identifying information and addresses are available to the Debtors).

23.     The Debtors shall also post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Kurtzman Carson Consulting, LLC, http://www.kccllc.net/advancedsports.

**Miscellaneous**

24.     The Debtors' right to seek this Court's approval of one or more Stalking Horse Purchasers, with notice and a hearing, is hereby preserved.

25.     Wells Fargo Bank, N.A. shall have the right to credit bid the full amount of all Obligations and any Existing Liabilities then outstanding as and to the extent set forth in an Order authorizing the Debtors to obtain post-petition financing pursuant to Section 364 of the Bankruptcy Code that is approved or will be approved on a final basis by this Court (the "DIP Order").

26.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

27.     In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, a Transaction Agreement, or a Stalking Horse Agreement, on the other hand, this Order and the Bidding Procedures shall control and govern, and this Order shall control in the event of any conflict with the Bidding Procedures.

28.     Prior to mailing the Sale Notice and the Assumption Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any

typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

29.     All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to a jury trial in connection with any disputes relating to the any of the foregoing matters.

30.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules is expressly waived. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

31.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

32.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

[END OF DOCUMENT]

Exhibit 1

Bidding Procedures

## BIDDING PROCEDURES

On November 16, 2018, Advanced Sports Enterprises, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [    ], 2018, the United States Bankruptcy Court for the Middle District of North Carolina (the "Court") entered an order [Docket No.        ] (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "Bidding Procedures"), which are to be employed by the Debtors in connection with the proposed sales of or other acquisition transactions (each a "Sale") of the Debtors' personal property and other related interests (the "Assets"), either individually or in groupings, free and clear of all liens, claims, encumbrances, and other interests (collectively, the "Encumbrances"), other than those Encumbrances permitted by a Transaction Agreement (as defined below), on an AS-IS, WHERE-IS with ALL FAULTS basis.

If, and to the extent that prior to the Bid Deadline (as defined below), the Debtors receive one or more acceptable offers that seek stalking-horse status, the Debtors reserve the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire one or more of the Debtors' Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser (each a "Stalking Horse Agreement"). Notwithstanding the selection of any Stalking Horse Purchaser, the Debtors will continue to solicit bids and accept bids through the Bid Deadline.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:**

**DA Davidson & Co. (the "Investment Banker"):**
**Mike Smith (Phone: (206) 903-8679; Email: msmith@dadco.com)**

| Milestones | Proposed Dates |
|---|---|
| Bidding Procedures Hearing | November 28, 2018 |
| Deadline to serve Sale Notice, including to potential purchasers by first class mail | November 30, 2018 |
| Deadline to serve Assumption Notice | November 30, 2018 |

| | |
|---|---|
| Deadline to object to Assumption Notice (other than adequate assurance) | December 13, 2018 at 4:00 p.m. (Eastern) |
| Deadline to object to Sale (other than with respect to assumption and assignment) | December 13, 2018 at 4:00 p.m. (Eastern) |
| Bid Deadline | December 14, 2018 at 12:00 p.m. (Eastern) |
| Auction commence | December 18, 2018 at 10:00 a.m. (Eastern) |
| Deadline to object to adequate assurance | Prior to commencement of Sale Hearing |
| Deadline to Object to Conduct of Auction | Prior to commencement of Sale Hearing |
| Sale Hearing | December 19, 2018 |
| Outside Closing Date | December 21, 2018 |

1. **Assets to be Sold**

The Debtors shall offer for sale all of the Assets. Potential Bidders may bid on all or any number or combination of the Assets.

2. **Participation Requirements**

Any person or entity that wishes to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "Data Room" and such person or entity, a "Potential Bidder") must submit to the Debtors and their advisors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidders, to the extent of confidential information relating to the Assets acquired by such party.

Any Potential Bidder that wishes to participate in the bidding process for the Assets must first become a "Qualifying Bidder." Parties may be qualified as a Qualifying Bidder up to the Bid Deadline **(i.e., December 14, 2018, at 12:00 p.m. (ET)), but parties interested in submitting a bid for any of the Assets are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids.** To become a Qualifying Bidder, Potential Bidders must submit sufficient

information, as determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties', to determine that the interested party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder pursuant to section 365 of the Bankruptcy Code in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) if and when there is one or more Stalking Horse Purchaser, any such designated Stalking Horse Purchasers shall be considered a Qualifying Bidder and any Stalking Horse Agreement shall be a Qualifying Bid (as defined below), and (ii) Wells Fargo Bank, N.A. shall be deemed a Qualifying Bidder.

To the extent that a bid is proposed by a group or committee to which Bankruptcy Rule 2019 applies, such parties must promptly file the statement required by such rule as a condition to becoming a Qualifying Bidder.

3.      **Bankruptcy Court Jurisdiction**

In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Debtors, the Investment Banker, and their respective representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

4.      **Form of Agreement**

Each Qualifying Bidder, must include with its bid:

(a)      an executed asset purchase agreement or other agreement for the applicable Sale (each a "Transaction Agreement"), clean and marked against the form provided by the Debtors, which must include the following:

i.      identification of the specific Assets to be acquired either in the Transaction Agreement itself or as a schedule to the Transaction Agreement;

3

ii.      full disclosure of the identity of the bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, along with the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors wish to discuss the bid submitted by the Qualifying Bidder;

iii.     the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, as well as any liabilities proposed to be paid or assumed by such Qualifying Bidder;

iv.     identify whether the Qualifying Bidder or the Debtors shall be responsible for (a) any transfer or similar taxes that arise from the Sale and (b) any cure costs required to be paid to assume and assign executory contracts and unexpired leases that are included in the bid;

v.      a commitment to close the transactions contemplated by the Transaction Agreement promptly upon entry of the order approving the Sale;

vi.     contain a written acknowledgement and representation that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

vii.    a statement that the Transaction Agreement is not subject to contingencies of any kind, including, including without limitation, contingencies related to financing, due diligence or third party, regulatory or internal approval; and

viii.   a statement that the Qualifying bidder has obtained any required internal corporate, legal or other authorizations to close a sale transaction and to provide adequate assurance of future performance as required under section 365 of the Bankruptcy Code.

**5.**      **<u>Due Diligence</u>**

Subject to the execution of a confidentiality agreement by a Potential Bidder or Qualifying Bidder, the Debtors will provide any Potential Bidder or Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors

believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Investment Banker at the contact information provided above.

All due diligence materials provided to Potential Bidders and Qualifying Bidders shall be subject to the limitations on use and disclosure included in any confidentiality agreement entered into pursuant to the Bidding Procedures.

Notwithstanding any limitations provided for in any due diligence materials in the Debtors' possession, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders that have executed a confidentiality agreement.

6.  **Bid Requirements**

To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and must satisfy each of the following requirements (each, a "Bid Requirement"):

(a)    be in writing;

(b)    fully disclose the identity of the Qualifying Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)    be accompanied by a clean, executed copy of a Transaction Agreement that satisfies the requirements of Section 4 of these Bidding Procedures, along with a marked copy of the Transaction Agreement that reflects any variations from the Debtors' form of Transaction Agreement, if any;

(d)    set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(e)    specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

(f)    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder (both as defined below) in which case such offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale of the subject Assets;

(g)     state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Transaction Agreement and contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, (i) written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement, and (ii) such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to make available, within one (1) business day after such receipt, such information to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information;

(h)     identify with particularity each and every executory contract, unexpired lease and unexpired sublease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

(i)     a commitment to close the transactions contemplated by the Transaction Agreement promptly upon of entry of the order approving the sale;

(j)     not request or entitle such Qualifying Bidder (other than a Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

(k)     in the event that there is a Stalking Horse Purchaser, and the Qualifying Bidder wishes to bid on the same Assets that are included in the Stalking Horse Agreement, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, plus (B) any break-up fee, expense reimbursement, or other bid protection provided under the Stalking Horse Agreement, plus (C) $100,000 of the purchase price under the Stalking Horse Agreement;

(l)     not contain any contingencies of any kind, including, including without limitation, contingencies related to financing, due diligence or third party, regulatory or internal approval;

(m)     provide for the Qualifying Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest and best bid (the "Back-Up Bid") after the Successful Bid (as defined below), in accordance with the terms of the Transaction Agreement and these Bidding Procedures;

6

(n)      include written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

(o)      subject to Section 7 of the Bidding Procedures, provide a good faith cash deposit (the "Deposit") in an amount equal to ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; provided, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court; and

(p)      provide for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit; and

Subject to the next sentence, a bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors both reserve the right and are authorized to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

7.      **Credit Bidding**

Any party that wishes to submit a credit bid either as a component or as the entirety of the consideration for its bid shall identify the amount of the claim and the nature, extent, and priority of the lien upon which its credit bid is premised. Except where the Debtors have stipulated to the amount of a Senior Secured Claim (as defined below) in a "cash collateral" order entered by the Court, any party submitting a credit bid agrees to provide the Debtors with documentation to evidence the amount, nature, extent, validity and perfection of such claim and lien to the extent it has not already done so. Wells Fargo Bank, N.A. has the right to credit bid the full amount of all Obligations and any Existing Liabilities then outstanding as and to the extent set forth in an Order authorizing the Debtors to obtain post-petition financing pursuant to Section 364 of the Bankruptcy Code that is approved or will be approved on a final basis by this Court (the "DIP Order").

Any party submitting a credit bid must include in their bid either (i) provisions for the satisfaction of any secured claims that are senior to the secured claim that forms the basis of the credit bid (a "Senior Secured Claim") or (ii) evidence that the holder of any Senior Secured Claim has affirmatively consented to any other treatment of its Senior Secured Claim.

Parties entitled to credit bid shall not be required to comply with Paragraphs 6(p) or 11(m) of the Bidding Procedures regarding providing a Deposit in connection with their bids solely with respect to the amount of the Senior Secured Claim included as consideration for their bid.

### 8.    **Bid Deadline**

A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors, with a copy to the Consultation Parties, so as to be received on or before December 14, 2018 at 12:00 p.m. (ET) (the "Bid Deadline"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties. All parties wishing to submit a Qualifying Bid shall submit the bid materials required by Section 6 (including the executed Transaction Agreement and a certified check or wire transfer for the Deposit amount) to the Investment Banker at the contact information provided above with a copy to counsel to the Debtors, (i) Flaster/Greenberg P.C., 1835 Market Street, Suite 1050, Philadelphia, PA 19103; Attn: William J. Burnett., Esquire (William.Burnett@flastergreenberg.com) and (ii) Northen Blue, LLP; Attn: John A. Northen, Esquire 1414 Raleigh Road #435, Chapel Hill, NC 27517 (jan@nbfirm.com).

**Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction. Consistent with the terms of any confidentiality agreements executed by them, all Potential Bidders and Qualifying Bidders shall maintain as confidential, up until the Auction, the fact that they have submitted a bid and the terms and conditions of such bid.**

### 9.    **Evaluation of Qualifying Bids**

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than two (2) days prior to the Auction Date (as defined below). In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and shall have one (1) day from the date of such notification to modify its bid so as to become a Qualifying Bid; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to the commencement of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder"), and shall promptly notify all Qualifying Bidders with Qualifying Bids of the Baseline Bid. The Baseline Bid may be comprised of any combination of Assets, and the Debtors may determine that different Baseline Bids exist for different lots of the Assets. The Debtors shall have the discretion to determine how to proceed when auctioning the Assets in lots that do not include all of Debtors' Assets so as to maximize the value of the Assets.

**10.**    **One Qualifying Bid**

If only one Qualifying Bid is submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall have the right to request at the Sale Hearing (as defined in the Bidding Procedures Order) that the Court approve the Transaction Agreement with the Qualifying Bidder and the transactions contemplated thereunder.

**11.**    **Auction**

In the event that the Debtors timely receive more than one Qualifying Bid, the Debtors shall conduct an auction (the "Auction"). Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest and best bid for the Assets, which will be determined by considering, among other things, the following non-binding and non-exclusive factors: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exists as a result of such variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with one or more other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

Notwithstanding anything to the contrary contained herein, the Debtors reserve the right to determine that no Qualifying Bid was received and/or to not select a Successful Bidder if the Debtors determine, in their sole discretion, it is not in the best interests of the Debtors' estates and their creditors to do so.

The Auction shall be governed by the following procedures:

     (a)    the Auction shall be held on December 19, 2018 at 10:00 a.m. (ET) (the "Auction Date") at the offices of Northen Blue, LLP, 1414 Raleigh Road # 435, Chapel Hill, NC 27517;

     (b)    only Qualifying Bidders with Qualifying Bids (together, the "Auction Bidders") shall be entitled to make any subsequent bids at the Auction;

(c)       the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative. In the event that a Qualifying Bidder becomes a Successful Bidder or Back-up Bidder, then whomever is attending the Auction on behalf of a Qualifying Bidder must have the authority, immediately after the conclusion of the Auction, to complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which a Successful Bid or Back-up Bid was made;

(d)       only the Debtors, the Auction Bidders, the Consultation Parties, and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction. Parties who intend to attend the Auction must provide counsel for the Debtors at least one (1) business day's written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements;

(e)       the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)       the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

(g)       bidding on any lot of Assets shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least the greater of $100,000 and 1% of the Baseline Bid, provided that: (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protections available to such Stalking Horse Purchaser; (iii) any bid made by any Stalking Horse Purchaser, including in each and every round of bidding, shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protection available to such Stalking Horse Purchaser in addition to the cash and other consideration provided for in its bid; and (iv) the Debtors shall retain the right to modify the bid increment requirements at the Auction, in consultation with the Consultation Parties;

(h)       the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)       all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)       the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not

inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Middle District of North Carolina, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(k)     the Auction Bidders shall have the right to make additional modifications to their Transaction Agreement in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of any Qualifying Bid that was announced as the then-current highest and best bid for the Assets that are the subject of the bids, and (ii) each Qualifying Bid (unless superseded by a subsequent Qualifying Bid at the Auction) shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until the conclusion of the Sale Hearing, unless such bid is selected as a Successful Bid or Back-Up Bid, which shall remain binding as provided for herein;

(l)     the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination, in consultation with the Consultation Parties, as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Transaction Agreement, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(m)     upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, subject to Court approval, the offer or offers for the Assets that is or are the highest and best from among the Qualifying Bids submitted at the Auction (each a "Successful Bid"). The bidder submitting a Successful Bid shall be the "Successful Bidder" for such Assets and shall have such rights and responsibilities of the purchaser as set forth in the Transaction Agreement. The Debtors shall designate a "Back-Up Bid (or Bids)" (and the corresponding "Back-Up Bidder (or Bidders)") in the event that a Successful Bidder does not close a Sale or the Court does not approve the Successful Bid. Subject to Section 7 of the Bidding Procedures, within one business day after the conclusion of the Auction, the Successful Bidder(s) and any Back-Up Bidder(s) shall deliver an additional Deposit payment so that each such bidder's total Deposit amount equal to ten percent (10%) of the cash amount of the Successful Bid or Back-Up Bid, as applicable; and

(n)     immediately after the conclusion of the Auction and without undue delay, each Successful Bidder and Back-Up Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid or Back-Up Bid was made.

**EACH SUCCESSFUL BID AND ANY BACK-UP BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL THE TIME PERIOD SPECIFIED IN THESE BIDDING PROCEDURES. EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE IRREVOCABLE UNTIL THE CONCLUSION OF THE SALE HEARING, AT WHICH POINT THEY SHALL BE DEEMED WITHDRAWN AND TERMINATED.**

### 12.    Sale Hearing

The Successful Bid (which, if no Auction is held, may be the Staking Horse Agreement) and any Back-Up Bid will be subject to approval by the Court. The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on December 19, 2018 at 10:00 a.m. (ET). The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

### 13.    Backup Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close the applicable Sale promptly after the Court enters an order approving of the Successful Bid by (or such date as may be extended by the Debtors in consultation with the Consultation Parties), (i) the Back-Up Bid for that Sale will be deemed to be the Successful Bid, (ii) the Back-Up Bidder will be deemed to be the Successful Bidder, and (iii) the Debtors will be authorized, but not directed, to immediately close that Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

### 14.    Return of Deposits

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or Back-Up Bidder for any Sale no later than three (3) business days following the conclusion of the Sale Hearing. The deposit of a Back-Up Bidder shall be returned within three (3) business days of the closing of the applicable Sale to the Successful Bidder; the deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as liquidated damages resulting to the Debtors and their estates for such breach or failure to perform.

### 15.    Consultation Parties

The term "Consultation Parties" as used in these Bidding Procedures shall mean, with respect to any Assets, unless such party is a potential bidder for such Assets: (i) counsel to the Official Committee of Unsecured Creditors; (ii) counsel to Wells Fargo Bank.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that any Consultation Party, any member of an official committee or an affiliate of any of the foregoing participates as a potential purchaser in the sales process, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action, until such party advises the Debtors that they are irrevocably withdrawing as a potential purchaser in the sale process at which time such party's consultation rights will be reinstated; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of an official committee submits a Qualifying Bid, such committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets in question and shall not provide any information regarding the sale of the Assets to such member.

### 16.    Reservation of Rights

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, to allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, to waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), to impose additional terms and conditions with respect to any or all Potential Bidders, to adjourn or cancel the Auction at or prior to the Auction, and to adjourn or cancel the Sale Hearing.

Additionally, the Debtors, in consultation with the Consultation Parties, have the right to terminate the sale and auction process with respect to any or all of the Assets at any time.

### 17.    Buyer's Brokers/Indemnity

Each Potential Bidder or Qualifying Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder, or agent acting on another's behalf. Each Potential Bidder or Qualifying Bidder understands that the Debtors and Investment Banker and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with a Potential Bidder's or Qualifying Bidder's possible purchase. In addition, each Potential Bidder or Qualifying Bidder hereby agrees to indemnify,

13

defend and hold the Debtors, Investment Banker, and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any such claims made by third-party brokers on account of or related to such Potential Bidder or Qualifying Bidder.

### 18. <u>Disclaimer</u>

By submitting a bid, each Potential Bidder and Qualifying Bidder agrees to and acknowledges the following terms and conditions with respect to any information received from the Debtors related to the Assets ("Information"):

      (a)    The Assets are being offered AS-IS, WHERE-IS, with ALL FAULTS.

      (b)    The Information has been prepared:

            i.    for informational purposes only;

            ii.    from materials supplied by the Debtors, local municipalities, and other sources commonly accepted as reliable sources for such type of Information; and

            iii.    to assist Potential Bidders and Qualifying Bidders in making their own evaluation of the offering and does not purport to be all-inclusive or to contain all of the information that interested parties may desire. The Debtors, Investment Banker and their respective officers, directors, employees, affiliates, agents, advisors and representatives (such parties, collectively, "Representatives") have not assumed responsibility for independent verification of any of the information contained herein and have not in fact in any way audited such Information. In all cases, Potential Bidders and Qualifying Bidders should conduct their own investigation and analysis of the offering, conduct site inspections, and scrutinize the Information. Potential Bidders and Qualifying Bidders should engage legal counsel, accountants, engineers, and/or such other professional advisors as Potential Bidders and Qualifying Bidders deem appropriate for evaluating the Assets.

      (c)    None of Potential Bidders, Qualifying Bidders or their respective Representatives are entitled to rely on the accuracy or completeness of the Information except as provided for in a Transaction Agreement that is authorized and approved by the Court.

      (d)    Although the Debtors and Investment Banker have endeavored for the Information to contain data which they believe to be relevant for the purpose of any Potential Bidder's or Qualifying Bidder's investigation, except as expressly set forth in a Transaction Agreement accepted by the Debtors and approved by the Court, none of the Debtors, Investment Banker or any of their respective Representatives:

14

   i. have made or make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express or implied or by operation of law or otherwise, with respect to the Assets or with respect to the accuracy, reliability or completeness of the Information;

   ii. to the fullest extent permitted by law, shall have any liability whatsoever to Potential Bidders, Qualifying Bidders or their Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of, relating or pertaining to, or resulting or arising from (i) any Potential Bidder's, any Qualifying Bidder's, or any of their Representative's reliance on the Information, (ii) Potential Bidder's, Qualifying Bidder's, or their Representatives' use or non-use of the Information, or (iii) any alleged acts or omissions of Debtors, Investment Banker or any of their respective Representatives, or any errors or omissions in the Information;

   iii. shall have any liability or responsibility for any decisions made by any Potential Bidder, Qualifying Bidder or any of their Representatives in reliance on any Information;

   iv. will be under any obligation or duty (express or implied) to make available any Information to any Potential Bidders, any Qualifying Bidders, or any of their Representatives; and

   v. will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Information disclosed under these Bidding Procedures, regardless of the circumstances.

  (e) No contract or agreement providing for any transaction shall be deemed to exist between a Potential Bidder or Qualifying Bidder and any Debtor unless and until a Qualifying Bidder and the applicable Debtor or Debtors execute and deliver a Transaction Agreement that is authorized and approved by the Court, and Potential Bidders and Qualifying Bidders hereby waive, in advance, any claims (including, without limitation, breach of contract) in connection with any transaction unless and until a Potential Bidder or Qualifying Bidder and the Debtors shall have executed and delivered a Transaction Agreement, which has been authorized and approved by the Court. The Debtors reserve the right, in their discretion, to reject any and all proposals made by any Potential Bidder or Qualifying Bidder with regard to a transaction, and to terminate discussions and negotiations with a Potential Bidder or Qualifying Bidder at any time. Subject to the terms of these Bidding Procedures, the Debtors shall be free to establish and change any process or procedure with respect to a transaction as the Debtors in their sole discretion shall determine (including, without limitation, negotiating with any other interested party and entering into a final definitive agreement relating to a transaction with any other party without prior notice to any Potential Bidder, Qualifying Bidder or any other person).

(f)     Each Debtor, the Investment Banker and the Debtors' other advisors, individually and collectively, have not made any representations or warranties except as expressly set forth in any Transaction Agreement executed by the applicable Debtor, which has been authorized and approved by the Court. Potential Bidders and Qualifying Bidders may rely only on the representations and warranties expressly set forth in a Transaction Agreement executed by the applicable Debtor, which has been authorized and approved by the Court.

Exhibit 2

Sale Notice

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Advanced Sports Enterprises, Inc., *et al.*,[1]** | ) | **Case No. 08-80856** |
| | ) | |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| Debtors. | ) | |
| | ) | |

## NOTICE OF SALE OF ASSETS

Advanced Sports Enterprises, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), are seeking to sell their personal property and other related interests (the "Assets"). The Debtors will consider proposals to acquire some or all of the Assets through a sale under section 363 of the Bankruptcy Code. The Debtors have reserved the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser.

By order, dated _____ [Docket No. _ (the "Bidding Procedures Order"), the Bankruptcy Court approved certain "Bidding Procedures" that govern the sale(s) of, or other transaction(s) to acquire, the Assets by the highest and best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

The Debtors have requested that the Bankruptcy Court enter an order or orders (the "Sale Orders"), providing, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption of certain liabilities. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale Orders.

Copies of the Bidding Procedures Order, the Bidding Procedures, and other pleadings are available at the website for the Debtors' claims and noticing agent, Kurtzman Carson Consulting, LLC, http://www.kccllc.net/advancedsports.

---

[1] The Debtors in this case, along with each Debtor's case number, are: (i) Advanced Sports Enterprises, Inc., Case No. 18-80856; (ii) Advanced Sports, Inc., Case No. 18-80857; (iii) Performance Direct, Inc., Case No. 18-80860; (iv) Bitech, Inc., Case No. 18-80858; and (v) Nashbar Direct, Inc., Case No. 18-80859. Each Debtor is a North Carolina Corporation.

**Any interested bidder should contact the Debtors' investment banker, DA Davidson & Co.: Mike Smith (Phone: (206) 903-8679; Email: msmith@dadco.com)**

**PLEASE TAKE NOTE OF THE FOLLOWING INFORMATION AND IMPORTANT DEADLINES:**

- The deadline to file an objection with the Bankruptcy Court to the proposed sale of the Assets (the "Sale Objection Deadline") is December 13, 2018 at 4:00 p.m. (ET); provided that, solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, or the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "Auction Objection"), the deadline to file an Auction Objection shall be prior to the commencement of the Sale Hearing.

- Objections must be filed and served in accordance with the Bidding Procedures Order. In connection with the proposed sale process, interested bidders may be subject to an expedited discovery process.

- The deadline to be qualified as a Qualifying Bidder and to submit a Qualifying Bid is December 14, 2018 at 12:00 p.m. (ET). Subject to Section 7 of the Bidding Procedures with respect to credit bids, all Qualifying Bids must be accompanied with a deposit in an amount equal to ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; provided however, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court.

- An auction for the Assets will commence on December 18, 2018 at 10:00 a.m. (ET) at the offices of Northen Blue, LLP, 1414 Raleigh Road #435, Chapel Hill, NC 27517.

- The Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed Sales on: December 19, 2018 at 10:00 a.m. (ET); Venable Center, Dibrell Building, Suite 280, 302 East Pettigrew Street, Durham, NC 27701.

      **THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE APPLICABLE OBJECTION DEADLINE SHALL BE DEEMED TO CONSENT TO, AND A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO, THE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE TRANSACTION AGREEMENT(S) (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF ANY OF THE ASSETS AND ASSUMPTION AND ASSIGNMENT OF ANY ASSUMED CONTRACTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated: November __, 2018                Respectfully submitted,

**NORTHEN BLUE LLP**

/s/ John A. Northen
John A. Northen
North Carolina State Bar No. 6789
jan@nbfirm.com
1414 Raleigh Road, Suite 435
Chapel Hill, North Carolina 27517
Telephone:  (919) 968-4441

PROPOSED COUNSEL FOR THE
DEBTORS-IN-POSSESSION

**FLASTER/GREENBERG P.C.**
William J. Burnett (PA Bar No. 75975)
(*pro hac* application pending)
Harry J. Giacometti (PA Bar No. 55861)
(*pro hac* application pending)
Damien Nicholas Tancredi (PA Bar No. 308317)
(*pro hac* application pending)
1835 Market Street, Suite 1050
Philadelphia, PA 19103
(215) 279-9383 Telephone
(215) 279-9394 Facsimile
william.burnett@flastergreenberg.com

Exhibit 3

Assumption Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Advanced Sports Enterprises, Inc.,** *et al.*,[12] | ) | Case No. 18-80856 |
| | ) | |
| | ) | **(Joint Administration Pending)** |
| | ) | |
| **Debtors.** | ) | |
| | ) | |

## NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

Advanced Sports Enterprises, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), are seeking to sell their personal property and other related interests (the "Assets"). The Debtors will consider proposals to acquire some or all of the Assets through a sale under section 363 of the Bankruptcy Code. The Debtors have reserved the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser.

The Debtors have requested that the Bankruptcy Court enter an order or orders (the "Sale Orders"), which provide, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by the applicable purchaser of certain liabilities. In connection with this marketing and sale process, the Debtors are seeking to assume or assume and assign certain of their executory contracts and unexpired leases related to the Assets (collectively, the "Assumed Contracts").

By order, dated          , 2018 [Docket No.     (the "Bidding Procedures Order"), the Bankruptcy Court approved certain "Bidding Procedures" that govern the sale of all of the Assets to the highest and best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order. Copies of the Bidding Procedures Order, the Bidding Procedures, and other pleadings are available for download from Debtors' claims and noticing agent, Kurtzman Carson Consultants, LLC; http://kccllc.net/AdvancedSports (the "Case Website").

---

[12]     The Debtors in this case, along with each Debtor's case number, are: (i) Advanced Sports Enterprises, Inc., Case No. 18-80856; (ii) Advanced Sports, Inc., Case No. 18-80857; (iii) Performance Direct, Inc., Case No. 18-80860; (iv) Bitech, Inc., Case No. 18-80858; and (v) Nashbar Direct, Inc., Case No. 18-80859.  Each Debtor is a North Carolina Corporation.

**You are receiving this Notice because you may be a party to an Assumed Contract. A list of the Assumed Contracts is attached hereto as Exhibit A.** The Debtors have determined the current amounts owing (the "Cure Amounts") under each Assumed Contract and have listed the applicable Cure Amounts on Exhibit A. The Cure Amounts are the only amounts proposed to be paid upon any assumption or assumption and assignment of the Assumed Contracts, in full satisfaction of all amounts outstanding under the Assumed Contracts.

**To the extent that a non-Debtor party to an Assumed Contract objects to (i) the assumption and assignment of such party's Assumed Contract or (ii) the applicable Cure Amounts, the non-Debtor counterparty must file and serve an objection in accordance with the Bidding Procedures Order, so as to be received by the undersigned counsel for the Debtors and the other parties specified therein by December 13, 2018, at 4:00 p.m. (ET).**

An auction (the "Auction") for the Assets, including the Assumed Contracts, will be conducted on December 18, 2018 at 10:00 a.m. (ET) at the offices of Northen Blue, LLP, 1414 Raleigh Road #435, Chapel Hill, NC 27517. After the Auction occurs (or after the cancellation of the Auction, if applicable), the Debtors will file and serve a notice that identifies the proposed acquirers of the Assets, and the proposed assignees of any Assumed Contracts. The deadline to object to adequate assurance of future performance with respect to such proposed assignees, shall be prior to the commencement of the Sale Hearing.

If no objection is timely received with respect to Cure Amounts or the assumption of an Assumed Contract, (i) a non-Debtor party to a Contract shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to such Contract, (ii) the Cure Amounts set forth on Exhibit A attached hereto shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the non-Debtor party to an Assumed Contract shall be deemed to have consented to the Cure Amounts, (iii) the non-Debtor party to a Contract shall be forever barred and estopped from asserting any other claims related to such Contract against the Debtors or the applicable transferee, or the property of any of them; and (iv) the Counterparty shall be deemed to consent to, and the Debtors shall be permitted to proceed with, the assumption and assignment of the applicable Assigned Contract.

The Debtors will seek to assume and assign the Assumed Contracts that have been selected by a Successful Bidder or the Stalking Horse Purchaser, if applicable, at a hearing before the Honorable Benjamin A. Kahn, in the United States Bankruptcy Court for the Middle District of North Carolina, Venable Center, Dibrell Building, Suite 280, 302 East Pettigrew Street, Durham, NC 27701 (a "Sale Hearing") on December 19, 2018, at 10:00 a.m. (ET), or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures Order. A hearing regarding the Cure Amounts, if any, may be adjourned by agreement of the Debtors and applicable objection party or by order of the Court.

2

Dated: November __, 2018                    Respectfully submitted,

                                            **NORTHEN BLUE LLP**

                                            /s/ John A. Northen
                                            John A. Northen
                                            North Carolina State Bar No. 6789
                                            jan@nbfirm.com
                                            1414 Raleigh Road, Suite 435
                                            Chapel Hill, North Carolina 27517
                                            Telephone:  (919) 968-4441

                                            PROPOSED COUNSEL FOR THE
                                            DEBTORS-IN-POSSESSION

                                            **FLASTER/GREENBERG P.C.**
                                            William J. Burnett (PA Bar No. 75975)
                                            (*pro hac* application pending)
                                            Harry J. Giacometti (PA Bar No. 55861)
                                            (*pro hac* application pending)
                                            Damien Nicholas Tancredi (PA Bar No. 308317)
                                            (*pro hac* application pending)
                                            1835 Market Street, Suite 1050
                                            Philadelphia, PA 19103
                                            (215) 279-9383 Telephone
                                            (215) 279-9394 Facsimile
                                            william.burnett@flastergreenberg.com

3

Exhibit A

Assumed Contracts