## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AE Bicycle Liquidation, Inc., *et al.*,[1] | ) | |
| | ) | Case No. 18-80856 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

### FIRST AMENDED JOINT PLAN OF LIQUIDATION

AE Bicycle Liquidation, Inc. (formerly known as Advanced Sports Enterprises, Inc.), AI Bicycle Liquidation, Inc. (formerly known as Advanced Sports, Inc.), Performance Direct, Inc., Bitech, Inc., and Nashbar Direct, Inc. (collectively, the "Debtors"), pursuant to 11 U.S.C. §§ 105, 363, 365, 506, 1123, 1129, 1141, and 1146 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure, propose the following First Amended Joint Plan of Liquidation (as amended, the "Plan").

**1.    INTRODUCTION.**  On November 16, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under Chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their properties and have continued to manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 21, 2018, the Court entered an order in each Debtor's case jointly administering the Debtors' cases under a single docket. An Official Unsecured Creditors' Committee was appointed to represent creditors in all the Chapter 11 Cases on November 27, 2018.  On or about July 30, 2019, the Debtors and the Committee negotiated a global settlement with the parties holding the remaining secured claims, consisting of Advanced Holdings BVI Co. Ltd., Ideal Bike Corporation and its affiliates, and York Street Mezzanine Partners II, L.P. as

---

[1]    The Debtors in this case, along with each Debtor's case number, are: (i) AE Bicycle Liquidation, Inc. (formerly known as Advanced Sports Enterprises, Inc.), Case No. 18-80856; (ii) AI Bicycle Liquidation, Inc. (formerly known as Advanced Sports, Inc.), Case No. 18-80857; (iii) Performance Direct, Inc., Case No. 18-80860; (iv) Bitech, Inc., Case No. 18-80858; and (v) Nashbar Direct, Inc., Case No. 18-80859.

Note Purchaser Agent for itself and the other Note Purchasers, as set forth in a Settlement Term Sheet which provided for continued use of Cash Collateral and this Joint Plan of Liquidation, subject to approval by the Court.

2. **DEFINITIONS.**    For purposes of the Plan and accompanying Disclosure Statement, the following definitions shall apply and, unless otherwise indicated, the singular shall include the plural:

2.1. **Administrative Expense Claim.** A Claim against a Debtor or its Estate for a cost or expense of administration that is entitled to priority or superpriority under sections 364(c)(1), 503(b), 503(c), 507(b) or 1114(e)(2) of the Bankruptcy Code.

2.2. **Advanced Holdings.** Advanced Holdings BVI Co. Ltd.

2.3. **Allowed Claim.** When used:

2.3.1. with respect to any Claim other than an Administrative Expense Claim, means a Claim that:

2.3.1.1. is not a Disputed Claim and (a) for which a proof of claim or interest was filed on or before the date designated by the Court as the last day on which to file such proofs of claim in a Debtor's proceeding, or (b) which is listed in the schedules filed by a Debtor (unless listed as unliquidated, disputed or contingent) and, in either case, to which (i) no objection has been filed within the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or order of the Court, or (ii) an objection has been timely filed and determined by Final Order, and then only to the extent the order allows such Claim; or

2.3.1.2. is Allowed (a) in any stipulation or other agreement between a holder of a Claim and a Debtor that, (i) if executed prior to the Effective Date, is approved by the Court, or (ii) if executed after the Effective Date, is not subject to Court approval, establishing the amount and nature of a Claim; (b) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Court; (c) pursuant to a Final Order; or (d) pursuant to the terms of the Plan.

2.3.2. with respect to an Administrative Expense Claim, means an Administrative Expense Claim that is Allowed (a) in any stipulation or other agreement between a holder of a Claim and a Debtor that, (i) if executed prior to the Effective Date, is approved by the Court, or (ii) if executed after the Effective Date, is not subject to Court approval, establishing the amount and nature of a Claim; (b) in any contract, instrument or other agreement

entered into in connection with the Plan and, if prior to the Effective Date, approved by the Court; (c) pursuant to a Final Order; or (d) pursuant to the terms of the Plan.

2.3.3.   Claims estimated and temporarily allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder.

2.4.   **ASE.** AE Bicycle Liquidation, Inc. (formerly known as Advanced Sports Enterprises, Inc.)

2.5.   **ASI.** AI Bicycle Liquidation, Inc. (formerly known as Advanced Sports, Inc.)

2.6.   **Assets.**  With respect to each Debtor, all of such Debtor's property, rights and interests that are property of each respective, non-consolidated Debtor's estate pursuant to section 541 of the Bankruptcy Code.

2.7.   **Bankruptcy Administrator.**   The United States Bankruptcy Administrator for the Middle District of North Carolina.

2.8.   **Bankruptcy Causes of Action.**  Any claim or cause of action which may be asserted by a debtor or a debtor-in-possession under sections 541, 542, 543, 544, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

2.9.   **Bankruptcy Code.**  Provisions of Title 11, United States Code, as amended from time to time and applicable to these Chapter 11 Cases.

2.10.   **Bankruptcy Rules.**  The Federal Rules of Bankruptcy Procedure and the local rules of the Court, as amended from time to time and applicable to these Chapter 11 Cases.

2.11.   **Bitech.** Bitech, Inc.

2.12.   **Cash Collateral Order.**  The *Final Order Pursuant to §§ 105, 361, 362, and 363 of the Bankruptcy Cod and Bankruptcy Rules 2002, 4001 and 9014 Granting Debtors' Motion for Use of Cash Collateral* (Doc. 498), as amended or extended from time to time by further order of the Court.

2.13.   **Chapter 11 Cases.**  The cases commenced by the Debtors under chapter 11 of the Bankruptcy Code, currently pending before the United States Bankruptcy Court for the Middle District of North Carolina, and filed as: (i) AE Bicycle Liquidation, Inc. (formerly known as Advanced Sports Enterprises, Inc.), Case No. 18-80856; (ii) AI Bicycle Liquidation, Inc. (formerly known as Advanced Sports, Inc.), Case No. 18-80857; (iii) Performance Direct, Inc.,

Case No. 18-80860; (iv) Bitech, Inc., Case No. 18-80858; and (v) Nashbar Direct, Inc., Case No. 18-80859

     2.14.   **Claim.**  A claim as defined in section 101(5) of the Bankruptcy Code.

     2.15.   **Claims Bar Date.**  In all Chapter 11 Cases, the date by which a proof of claim must be filed with the Court, which shall be, as applicable, (a) with respect to all creditors except a governmental unit, March 14, 2019, (b) with respect to a governmental unit, May 15, 2019, and (c) with respect to claims arising from the rejection of any executory contract or unexpired lease, thirty (30) days from the Effective Date, or such other (whether earlier or later) deadline as may be set by the Court generally or with respect to any specific lease or contract rejected by a Debtor.

     2.16.   **Class.**  A class of Claims or Equity Interests, as described in Section 4 of the Plan.

     2.17.   **Collateral.**  Estate Property which has been duly and properly pledged to a creditor to secure indebtedness, and which pledge (of whatever nature) has not been avoided.

     2.18.   **Committee.**  The Official Committee of Unsecured Creditors appointed on November 27, 2018.

     2.19.   **Confirmation Date.**  The date on which the Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

     2.20.   **Confirmation Hearing.**  The hearing held by the Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

     2.21.   **Confirmation Order.**  The order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

     2.22.   **Court.**  The United States Bankruptcy Court for the Middle District of North Carolina, and any district court or appellate court that exercises jurisdiction over this case.

     2.23.   **Debtors.**  AE Bicycle Liquidation, Inc. (formerly known as Advanced Sports Enterprises, Inc.), AI Bicycle Liquidation, Inc. (formerly known as Advanced Sports, Inc.), Performance Direct, Inc., Bitech, Inc., and Nashbar Direct, Inc.

     2.24.   **Disallowed Claim.**  A Claim that has been disallowed by a Final Order or a stipulation or other agreement between a holder of a Claim and the Debtors.

     2.25.   **Disputed Claim.**  Any Claim (a) scheduled by a Debtor as disputed,

contingent or unliquidated, unless a proof of claim was timely filed, (b) filed but with respect to which an objection has been interposed which has not been resolved by a withdrawal of such objection, agreement approved by the Court, or entry of a Final Order, or (c) is set forth in an improper proof of claim or a proof of claim untimely filed, whether or not a formal claim objection has been filed with respect to such claim.

2.26.  **Effective Date.**  The first day of the month following the Confirmation Date or such sooner or later date as may be set forth in the Confirmation Order, unless the Confirmation Order has been stayed pending appeal.

2.27.  **Entity.**  A person (as defined in section 101(41) of the Bankruptcy Code), a firm, a limited liability company, a joint venture, an association, an unincorporated organization, an estate, a trust or a governmental unit.

2.28.  **Equity Interest.**  Any common stock or other capital stock issued by a Debtor and outstanding immediately prior to the Petition Date, and any options, warrants or other rights with respect thereto (or as provided for in other instruments evidencing an ownership interest or the right to purchase or demand the issuance of any of the foregoing in a Debtor), including, without limitation, any (a) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends), (b) liquidation preferences, and (c) membership interest options and warrants.

2.29.  **Estate or Estate Property.**  Property of a Debtor's estate as defined by section 541 of the Bankruptcy Code and other applicable law.

2.30.  **Final Allocation.**  The allocation of assets, expenses and net cash as set forth in the Joint Motion of the Debtors and the Committee (Doc. 891, the "Allocation Motion"), the proposed Final Allocation attached to the Allocation Motion as Exhibit B thereto, and as modified by the Settlement Term Sheet (adjusting the percentages in order to assure that all estates were administratively solvent) and detailed in Schedule 2 thereto, and more specifically set forth in Section 4.3.1.

2.31.  **Final Consummation.** The consummation of all things contained in or provided for in the Plan necessary for the entry of a Final Decree.

2.32.  **Final Decree.**  The final decree entered by the Court pursuant to Bankruptcy Rule 3022.

2.33.  **Final Order.**  An order or judgment of the Court as entered on the docket

of the Court, (a) that has not been reversed, stayed, and as to which the time to appeal or petition for certiorari or move for a new trial, reargument or rehearing has expired, and as to which no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing that has been timely taken is pending, or (b) as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

2.34.   **Final Report.**  A report to be filed by the Debtors with the Court upon and after completion of all acts required to achieve Final Consummation of the Plan, which report shall include, but not be limited to, all information necessary to meet the reporting requirements of the Court, the Bankruptcy Administrator, and the Plan.

2.35.   **General Unsecured Claims (or "GUC").**   Unsecured claims, including the deficiency claims of Ideal and York Street Note Purchasers but excluding Administrative Expense Claims, Priority Claims and Priority Tax Claims.

2.36.   **Ideal.**  Ideal Bike Corporation and its affiliates, Topsports International Holdings Limited and Econotrade Limited

2.37.   **Ideal Adversary Proceeding.**  That certain adversary proceeding commenced by the Official Committee of Unsecured Creditors of Advanced Sports Enterprises, Inc., et al, against Ideal Bike Corporation, Topsports International Holdings Limited, Advanced Holdings Co. Ltd., and Econotrade Limited, AP No. 19-9013.

2.38.   **Intercreditor Agreement.**  That certain Amended and Restated Intercreditor Agreement dated December 22, 2017.

2.39.   **Liabilities.**  Any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction, agreement, employment, exposure or other occurrence taking place on or prior to the Effective Date.

2.40.   **Lien.**  Any "lien" as defined in section 101(37) of the Bankruptcy Code.

2.41.   **Nashbar.**  Nashbar Direct, Inc.

2.42. **Net Available Cash.** With respect to each Debtor, all net proceeds recovered or generated from the liquidation of Assets or from any other sources (excluding Net Recoveries on Bankruptcy Causes of Action), less payment or provisions for Allowed Administrative Expense Claims, Allowed Priority Claims, and Allowed Priority Tax Claims. Any unexpended balance of reserves created for payment of Allowed Administrative Expense Claims, Allowed Priority Claims, and Allowed Priority Tax Claims, the Benefits Claim Reserve, the post-confirmation reserve, and any other reserves, whether established pursuant to the Cash Collateral Order, the Plan or otherwise, shall be added to Net Available Cash once such claims have been determined and paid.

2.43. **Net Recoveries on Bankruptcy Causes of Action.** With respect to each Debtor, all net proceeds recovered on Bankruptcy Causes of Action, after payment or provisions for fees and costs incurred in pursuing, litigating or settling such actions.

2.44. **Notice and Hearing.** Notice and hearing as defined by section 102 of the Bankruptcy Code.

2.45. **Performance Direct.** Performance Direct, Inc.

2.46. **Petition Date.** November 16, 2018.

2.47. **Plan.** This joint plan of liquidation for the Debtors, as the same may be amended, modified or supplemented from time to time.

2.48. **Plan Administrator:** The Finley Group, Inc., acting by or at the direction of Elaine Rudisill, or such other entity or person as may be appointed by the Court upon its resignation, or upon written request by any interested party for cause, such as failure to comply with the terms of the Plan, after Notice and Hearing.

2.49. **Priority Claim.** A Claim that is unsecured and is entitled to priority under sections 507 or 364 of the Bankruptcy Code, excluding Priority Tax Claims.

2.50. **Priority Tax Claim.** A Claim for federal, state or local taxes, whether secured or unsecured, that is entitled to priority under sections 507 or 364 of the Bankruptcy Code.

2.51. **Pro Rata.** A proportionate distribution so that with respect to a particular Claim in a group or Class of Claims, a number (expressed as a percentage) equal to the proportion that the amount of any Allowed Claim in the group or Class bears to the aggregate amount of all Allowed Claims in such group or Class as of the date of determination.

2.52. **Secured Claim.** A Claim that is secured by a Lien on Estate Property or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code, and that has not been avoided.

2.53. **Secured Creditors.** Advanced Holdings, York Street Note Purchasers and Ideal.

2.54. **Settlement Term Sheet.** Settlement Term Sheet executed on or about July 30, 2019 by the Debtors, the Committee, Advanced Holdings, York Street and Ideal, a copy of which is attached to the Amended Disclosure Statement (Doc. 1001, as amended the "Disclosure Statement").

2.55. **Substantial Consummation.** The date on which the Debtors have substantially completed all requirements of the Plan as determined in accordance with § 1101(2) of the Bankruptcy Code.

2.56. **York Street.** York Street Mezzanine Partners II, L.P.

2.57. **York Street Adversary Proceeding.** That certain adversary proceeding commenced by the Official Committee of Unsecured Creditors of Advanced Sports Enterprises, Inc., et al, against York Street Mezzanine Partners II, L.P., Howard Gary Heavin and Diane Heavin, Garry Snook and Sharon Snook, and Peter A. Roy, AP No. 19-9012.

2.58. **York Street Note Purchasers.** York Street Mezzanine Partners II, L.P.; Howard Gary Heavin and Diane Heavin; Garry Snook and Sharon Snook; and Peter A. Roy.

3. **COMPROMISE AND SETTLEMENT WITH SECURED CREDITORS.**
Advanced Holdings, Ideal and York Street Note Purchasers (the Secured Creditors) each filed claims asserting that their respective claims were secured by valid, non-avoidable security interests in all or substantially all of the assets of one or more of the respective Debtors, and of varying priorities. The Committee initiated the Ideal Adversary Proceeding and the York Street Adversary Proceeding which challenged the validity and relative priority of the liens asserted by the Secured Creditors, sought to avoid certain liens asserted by the Secured Creditors and recover certain transfers made to or for the benefit of Ideal. Confirmation of the Plan shall constitute approval by the Court of a compromise and settlement of the claims asserted by the

Secured Creditors pursuant to Bankruptcy Rule 9019, as set forth in the Settlement Term Sheet and summarized below:

**3.1.** The Secured Creditors consent to the use of their collateral to fund a $500,000 post-confirmation reserve, which funds will be used to administer and implement the Plan.

**3.2.** In addition to consenting to the use of their cash collateral to fund the Budget and payment of allowed Administrative and Priority Claims, the Secured Creditors consent to the distribution of the Net Available Cash in the estates of ASI, Performance Direct and Bitech to be distributed as follows: (i) five percent (5.0%) of the Net Available Cash of each estate to be distributed to York Street Note Purchasers, (ii) forty percent (40%) of the Net Available Cash of each estate to Advanced Holdings, and (iii) fifty five percent (55%) of the Net Available Cash of each estate to be distributed to holders of allowed General Unsecured Claims. All Secured Creditors agree to subordinate distributions on account of their deficiency claims against ASE and Nashbar with respect to distributions to other GUC creditors of ASE and Nashbar.

**3.3.** All Net Recoveries on Bankruptcy Causes of Action of ASI, Performance Direct and Bitech shall be shared as follows: (i) fifty five percent (55%) of such net recoveries allocated to holders of allowed General Unsecured Claims (including deficiency claims of Ideal and York Street Note Purchasers), (ii) forty percent (40%) of such recoveries allocated to Advanced Holdings, and (iii) five percent (5%) of such recoveries allocated to York Street Note Purchasers. All Secured Creditors agree to subordinate distributions on account of their deficiency claims against ASE and Nashbar with respect to distributions to other GUC creditors of ASE and Nashbar.

**3.4.** Advanced Holdings' claim shall be allowed in the amount of $8,951,068.49 against each of the Debtors' estates; York Street Note Purchasers' claim shall be allowed in the aggregate amount of $20,353,888.88 against each of the Debtors' estates; and, Ideal's claim shall be allowed in the amount of $29,531,047.36 against ASI and ASE, in addition to an allowed administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code in the amount of $157,344.30.

**3.5.** The Ideal Adversary Proceeding and the York Street Adversary Proceeding shall be dismissed with prejudice, and the Plan shall provide for full general mutual releases.

4.    **JOINT ADMINISTRATION, NO SUBSTANTIVE CONSOLIDATION, ALLOCATION OF ASSETS AND EXPENSES.**

**4.1.**    Joint Administration. All pleadings and other papers filed in these Chapter 11 Cases, with the exception of proofs of claim, shall continue to be filed under the lead case, AE Bicycle Liquidation, Inc. (formerly known as Advanced Sports Enterprises, Inc.), Case No. 18-80856.    The Debtors shall be permitted to file their post-confirmation reports on a consolidated basis.

**4.2.**    No Substantive Consolidation. Notwithstanding confirmation of this Joint Plan of Liquidation for all of the Debtors, the Debtors' Estates shall not be substantively consolidated. Each Debtor's Estate shall be administered separately as to the receipt and disbursement of proceeds of each Debtors' assets and payment of each Debtor's expenses, allocated in the manner set forth below, and distributions to holders of Allowed Claims.

**4.3.**    Allocation of Assets and Expenses. The Debtors' assets, expenses and net cash shall be allocated among the respective Estates in the manner set forth in the Joint Motion of the Debtors and the Committee (Doc. 891, the "Allocation Motion"), the proposed Final Allocation attached to the Allocation Motion as Exhibit B thereto, and as modified by the Settlement Term Sheet (adjusting the percentages in order to assure that all estates were administratively solvent) and detailed in Schedule 2 thereto, and more specifically set forth in Section 4.3.1 below:

**4.3.1.**    The Debtors' recoveries, net of expenses, from (i) pre-petition cash, (ii) GOB Sales and pre-363 Sale disposition of assets, (iii) the 363 Sale, and (iv) post-GOB Sales disposition of assets, less disbursements made to satisfy the indebtedness held by Wells Fargo Bank, N.A. (referred to in the Final Allocation as the Net Distributable Proceeds) shall be adjusted to pay all allowed administrative expenses and allowed priority claims and allocated as follows:

| Debtor Entity | Allocation |
|---------------|------------|
| ASE | 7.4% |
| ASI | 56.3% |
| Bitech | 20.0% |
| Performance | 15.5% |
| Nashbar | 0.8% |

**4.3.2.**  To the extent additional assets are liquidated or expenses are incurred which are not specifically addressed in the Final Allocation or the Settlement Term Sheet, such assets and expenses shall be allocated using the same methodology.

**5.**     **ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY CLAIMS AND PRIORITY TAX CLAIMS.**  For purposes of the Plan, Administrative Expense Claims, Priority Claims and Priority Tax Claims shall be treated as follows:

**5.1.**    **Administrative Expense Claims.**  Except as provided herein, Administrative Expense Claims shall be allowed upon due request or application and in such amounts as may be determined by the Court after Notice and Hearing.

**5.1.1.**  Operating expenses shall be paid in the ordinary course and in accordance with the payment terms thereof, except that in the event of a dispute with respect thereto such dispute shall be resolved by the Court after Notice and Hearing.  Holders of Administrative Expense Claims for operating expenses shall not be required to file any request for payment of such Claims except as otherwise ordered by the Court.

**5.1.2.**  Federal and state income taxes payable as a result of operations or the conveyance, sale or other disposition of Estate Property shall be filed and paid when due or as such deadlines may be extended, subject to acceptance of such returns by the applicable taxing authorities or determination of the amount due pursuant to Section 505 of the Bankruptcy Code.

**5.1.3.**  Professionals employed by the Debtors or the Committee shall be compensated for services rendered in such capacity and reasonably necessary to the administration of these Estates upon an hourly basis and at their customary hourly rates not to exceed reasonable compensation for such services, in such amounts and at such times as may be determined by the Court.

**5.1.4.**  The Plan Administrator and professionals employed by the Plan Administrator shall be compensated for services rendered in such capacity and reasonably necessary to the administration of these Estates upon an hourly basis and at their customary hourly rates not to exceed reasonable compensation for such services, or on a contingent fee basis, in such amounts and at such times as may be determined by the Court.

11

**5.1.5.**   Statutory fees to the Court shall be paid on a quarterly basis in accordance with the Bankruptcy Rules until such time as a Final Report is filed in the Chapter 11 Cases.

**5.1.6.**   With respect to all other Administrative Expense Claims, requests for allowance of such Claims shall be filed with the Court within thirty (30) days after the Effective Date, or such other (whether earlier or later) deadline as may be set by the Court; provided however, parties who have filed Administrative Expense Claims prior to the Effective Date shall not be required to refile such claims.  **ANY SUCH ADMINISTRATIVE EXPENSE CLAIM THAT IS NOT TIMELY FILED SHALL BE DISALLOWED AND THE HOLDER OF SUCH CLAIM SHALL BE FOREVER BARRED, ESTOPPED, AND PERMANENTLY ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIM AGAINST THE DEBTORS OR THEIR ESTATES.**

**5.1.7.**   Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to less favorable treatment, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Expense Claim, an amount in cash equal to the allowed amount of such Claim on or before the later of (i) the Effective Date or (ii) as soon thereafter as the allowed amount of such Claim can be determined and, if necessary, allowed by the Court pursuant to a Final Order. Notwithstanding anything to the contrary in the Plan, nothing shall modify the rights, if any, of any counterparty to an executory contract or lease of non-residential real property to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy or non-bankruptcy law.

**5.1.8.**   Administrative Expense Claims are not impaired by the Plan, and holders of Administrative Expense Claims are not entitled to vote to accept or reject the Plan.

**5.2.**   **Priority Claims.**  Except to the extent that any Entity entitled to payment of an Allowed Priority Claim agrees to less favorable treatment, the Debtors shall pay to each holder of an Allowed Priority Claim in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Claim, an amount in cash equal to the allowed amount of such Claim at the later of (i) 60 days after the Effective Date or (ii) as soon thereafter as the allowed amount of such Claim can be determined and, if necessary, allowed by the Court

12

pursuant to a Final Order. Priority Claims are not impaired by the Plan, and holders of Priority Claims are not entitled to vote to accept or reject the Plan.

       5.3.    **Priority Tax Claims.**  Priority Tax Claims (whether unsecured or secured in part or in full by property of any Debtor's estate or the proceeds thereof) which are the joint and several liabilities of the Debtors shall be allocated among the Debtors pursuant to the Total Assets methodology set forth in the Allocation Motion.  Except to the extent that any Entity entitled to payment of an Allowed Priority Tax Claim agrees to less favorable treatment, the Debtors shall pay to each holder of an Allowed Priority Tax Claim in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim and cancellation of any lien securing such Claim, an amount in cash equal to the allowed amount of such Claim, with interest from the Petition Date at the applicable statutory rate, at the later of (i) 60 days after the Effective Date or (ii) as soon thereafter as the allowed amount of such Claim can be determined and, if necessary, allowed by the Court pursuant to a Final Order; and, any liens securing such Priority Tax Claims shall remain in full force and effect until such Claims are paid in full. Priority Tax Claims are not impaired by the Plan, and holders of Priority Tax Claims are not entitled to vote to accept or reject the Plan; provided however, in the event any Priority Tax Claim is not paid as provided hereinabove, the holder of such Claim may seek appropriate relief from the Court upon due notice and hearing.

       5.4.    **Post-confirmation Use of Collateral.** The Secured Creditors consent to the use of their Collateral to fund a $500,000 post-confirmation reserve, which funds will be used to administer and implement the Plan.

       5.5.    **Employee Health Benefits and Related Claims.**

       Pursuant to an administrative services agreement (the "BCBS Services Agreement"), Blue Cross/Blue Shield of North Carolina ("BCBS") provides administrative services for the Debtors' self-insured employee health care benefits plan (the "Benefits Plan").  Under the agreement, BCBS processes health care claims of the Debtors' employees and their dependents ("Benefits Claims"), and causes the Benefits Claims that are eligible for payment under the Benefits Plan ("Payable Benefits Claims") to be funded through the Debtors' bank account.

       In accordance with the Debtors' direction, coverage under the Benefits Plan terminated on April 30, 2019 (the "Termination Date").  Nevertheless, the Debtors have elected to provide for Benefits Claims incurred prior to the Termination Date, but not yet submitted, processed

and/or paid ("Run-Off Claims"), to be processed by BCBS and paid for through and including April 30, 2020 (the "Benefits Cutoff Date"). Such authority is provided to the Debtors pursuant to: (a) the Final Order Authorizing Payment of Pre-Petition Wages, Payroll Taxes, Certain Employee Benefits and Related Expenses, and Other Compensation to Employees dated November 29, 2018 (Dkt No. 127); and (b) the Cash Collateral Order.

Further, pursuant to a DDM Service Agreement dated as of May 1, 2017 (the "DDM Service Agreement"), Advanced Sports Enterprises, Inc. designated ELAP Services, LLC ("ELAP") to act as a fiduciary with respect to determining reimbursements amounts for benefit claims in accordance with provisions of the Advanced Sports Enterprises, Inc. Employee Benefit Plan. ELAP continues to negotiate provider claims on behalf of the Debtors' employees ("ELAP Claims").

To fund the payment of (a) the Run-Off Claims, and (b) the ELAP claims, the Debtors have reserved funds in accordance with the Cash Collateral Order in the aggregate amount of $900,000.00 (less any amounts paid between August 15, 2019 and the Effective Date), which reserve amount the Debtors estimate is sufficient to pay any and all such claims as that may occur (the "Benefits Claims Reserve").

From and after the Effective Date, BCBS shall process all Run-Off Claims received prior to the Benefits Cutoff Date in accordance with the terms of the BCBS Services Agreement, and shall cause such Run-Off Claims, to the extent allowed, to be paid from the Benefits Claims Reserve. BCBS shall not be required to process Run-Off Claims received after the Benefits Cutoff Date, or to cause the payment of any Run-Off Claims to the extent that the Benefits Claims Reserve is insufficient to fund the payment of such remaining claims.

From and after the Effective Date, ELAP shall make payment on account of the ELAP Claims received prior to the Benefits Cutoff Date in accordance with the terms of the DDM Service Agreement. ELAP shall not be required to process ELAP Claims received after the Benefits Cutoff Date, or to cause the payment of any such ELAP Claims to the extent that the Benefits Claims Reserve is insufficient to fund the payment of such claims.

Provided that ELAP and BCBS have completed their respective obligations hereunder, their obligations under their respective agreements with the Debtors shall be deemed fully performed as of the Benefits Cutoff Date, and they shall be deemed released from any liability,

including liability under 11 U.S.C. § 547, 548, 549 and 550, arising from or relating to said agreements.

Notwithstanding anything in the Plan to the contrary, the BCBS Services Agreement, DDM Service Agreement, the Debtors' Stop Loss Policy, and any other of the Debtors' benefits policies still in effect as of the Effective Date (collectively, "Benefits Policies"), shall not be assumed or rejected under the Plan, but shall be deemed to have passed through confirmation of the Plan and validly terminated effective as of the Benefits Cutoff Date.

Any and all (a) Run-Off Claims received by BCBS after the Benefits Cut-Off Date and (b) ELAP Claims received by ELAP after the Benefits Cut-Off Date shall be deemed disallowed and barred and such claims shall not be entitled to be paid from the Benefits Claims Reserve or otherwise.   As of the Benefits Cut-Off Date, all remaining unused funds in the Benefits Claims Reserve shall become Net Available Cash and the Plan Administrator shall not be required to maintain any further reserve for Benefit Claims and ELAP Claims which have not been received prior to the Benefits Cut-Off Date.

6.    **DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS.**
For purposes of the Plan, Claims and Equity Interests are classified as follows, with each Class composed of a sub-class for each of the Debtors:

6.1.    **Class 1** shall consist of the Secured Claims of Advanced Holdings.

6.2.    **Class 2** shall consist of the Secured Claims of York Street Note Purchasers.

6.3.    **Class 3** shall consist of the General Unsecured Claims.

6.4.    **Class 4** shall consist of the Equity Interests.

6.5.    Each Class shall be divided into the following sub-classes:

6.5.1.   AE Bicycle Liquidation, Inc. (Advanced Sports Enterprises, Inc.).

6.5.2.   AI Bicycle Liquidation, Inc. (Advanced Sports, Inc.).

6.5.3.   Performance Direct, Inc.

6.5.4.   Bitech, Inc.

6.5.5.   Nashbar Direct, Inc.

7.    **TREATMENT OF CLASSES UNDER THE PLAN.**   Claims and Equity Interests shall receive the following treatment under the Plan:

7.1.    **Class 1: Secured Claims of Advanced Holdings.**  The Class 1 Secured Claims of Advanced Holdings shall be treated as follows:

7.1.1.    Advanced Holdings shall have an Allowed Claim in the amount of $8,951,068.49 against each of the Debtor's Estates. Except as otherwise provided herein or any order of the Court entered in the Chapter 11 Cases, the holders of Class 1 Secured Claims shall continue to retain any Lien on the Collateral securing such Claims or the net proceeds thereof. Upon the Effective Date, the Ideal Adversary Proceeding shall be dismissed with prejudice.  The Secured Creditors have waived the terms of the Intercreditor Agreement to permit the division of the Secured Creditors' Collateral and recoveries on Bankruptcy Causes of Action as set forth below.

7.1.2.    Forty percent (40%) of the Net Available Cash in the estates of ASI, Performance Direct and Bitech shall be distributed to Advanced Holdings. Distribution on account of Advanced Holdings' deficiency claims against ASI, Performance Direct and Bitech shall be subordinated to distributions to other GUC creditors of ASI, Performance Direct and Bitech, including the allowed deficiency claims of York Street Note Purchasers and Ideal. Distributions on account of Advanced Holdings' deficiency claims against ASE and Nashbar shall be subordinated to distributions to other GUC creditors of ASE and Nashbar.

7.1.3.    Forty percent (40%) of all Net Recoveries on Bankruptcy Causes of Action of ASI, Performance Direct and Bitech shall be allocated to Advanced Holdings. All net recoveries on Bankruptcy Causes of Action of ASE and Nashbar, if any, shall be allocated 100% to other GUC creditors of ASE and Nashbar (other than the Secured Creditors).  All recoveries made pursuant to section 547 or 548 shall be allocated to the Debtor who made such payment or transfer as identified in the Debtors' Statement of Financial Affairs.

7.1.4.    The Class 1 Secured Claims are impaired by the Plan.  The holder of Class 1 Secured Claims is entitled to vote to accept or reject the Plan.

7.2.    **Class 2: Secured Claims of York Street Note Purchasers.**  The Class 2 Secured Claims of York Street Note Purchasers shall be treated as follows:

7.2.1.    York Street Note Purchasers shall have an Allowed Claim in the aggregate amount of $20,353,888.88 against each of the Debtor's Estates. Except as otherwise provided herein or any order of the Court entered in the Chapter 11 Cases, the holders of Class 2 Secured Claims shall continue to retain any Lien on the Collateral securing such Claims or the

net proceeds thereof.  Upon the Effective Date, the York Street Adversary Proceeding shall be dismissed with prejudice. The Secured Creditors have waived the terms of the Intercreditor Agreement to permit the division of the Secured Creditors' Collateral and recoveries on Bankruptcy Causes of Action as set forth below.

**7.2.2.**  Five percent (5.0%) of the Net Available Cash in the estates of ASI, Performance Direct and Bitech shall be distributed to York Street Note Purchasers.  York Street Note Purchasers shall be entitled to share *pro rata* with other GUC creditors to the extent of its allowed deficiency claims against ASI, Performance Direct and Bitech. Distribution on account of York Street Note Purchasers' deficiency claims against ASE and Nashbar shall be subordinated to distributions to other GUC creditors of ASE and Nashbar.

**7.2.3.**  Five percent (5%) of all Net Recoveries on Bankruptcy Causes of Action of ASI, Performance Direct and Bitech shall be allocated to York Street Note Purchasers. All net preference recoveries of ASE and Nashbar, if any, shall be allocated 100% to other GUC creditors of ASE and Nashbar (other than the Secured Creditors).  All recoveries made pursuant to section 547 or 548 shall be allocated to the Debtor who made such payment or transfer as identified in the Debtors' Statement of Financial Affairs.

**7.2.4.**  The Class 2 Secured Claims are impaired by the Plan.  The holders of Class 2 Secured Claims are entitled to vote to accept or reject the Plan.

**7.3.**  **Class 3:  General Unsecured Claims.**  General Unsecured Claims shall be treated as follows:

**7.3.1.**  Ideal shall waive or release any lien upon or security interest in Estate Property and shall have an Allowed General Unsecured Claim in the aggregate amount of $29,531,047.36 against ASI and ASE, in addition to Ideal's Allowed Administrative Expense Claim pursuant to section 503(b)(9) of the Bankruptcy Code in the amount of $157,344.30.

**7.3.2.**  Fifty five percent (55%) of the Net Available Cash in the estates of ASI, Performance Direct and Bitech, respectively, shall be distributed to holders of allowed General Unsecured Claims (including the allowed deficiency claims of York Street Note Purchasers and Ideal, but excluding the deficiency claim of Advanced Holdings which shall be subordinated to distributions to other GUC creditors until such claims are paid in full) of ASI, Performance Direct and Bitech, respectively; and, one hundred percent (100%) of the Net Available Cash in the estates of ASE and Nashbar, respectively, shall be distributed to holders of

allowed General Unsecured Claims (<u>excluding</u> the allowed deficiency claims of the Secured Creditors, which shall be subordinated to distributions to other GUC creditors until such claims are paid in full) of ASE and Nashbar, respectively.

**7.3.3.** Fifty five percent (55%) of all Net Recoveries on Bankruptcy Causes of Action of ASI, Performance Direct and Bitech, respectively, shall be distributed to holders of allowed General Unsecured Claims (<u>including</u> the allowed deficiency claims of York Street Note Purchasers and Ideal, but <u>excluding</u> the deficiency claim of Advanced Holdings which shall be subordinated to distributions to other GUC creditors until such claims are paid in full) of ASI, Performance Direct and Bitech, respectively; and, one hundred percent (100%) of all Net Recoveries on Bankruptcy Causes of Action of ASE and Nashbar, respectively, shall be distributed to holders of allowed General Unsecured Claims (<u>excluding</u> the allowed deficiency claims of the Secured Creditors, which shall be subordinated to distributions to other GUC creditors until such claims are paid in full) of ASE and Nashbar, respectively. All recoveries made pursuant to section 547 or 548 shall be allocated to the Debtor who made such payment or transfer as identified in the Debtors' Statement of Financial Affairs.

**7.3.4.** The Class 3 General Unsecured Claims are impaired by the Plan. The holders of Class 3 General Unsecured Claims are entitled to vote to accept or reject the Plan.

**7.4.** <u>**Class 4: Equity Interests**</u>.

**7.4.1.** The existing equity interests in the Debtors shall be extinguished as of the Effective Date.

**7.4.2.** Holders of Class 4 Equity Interests will receive or retain no property on account thereof.

**7.4.3.** The Class 4 Equity Interests are impaired by the Plan. Holders of Class 4 Equity Interests are conclusively deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

**8.** <u>**CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES**</u>. The Debtors shall utilize section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan with respect to any impaired Class that has not accepted or is deemed not to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

9.    **MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**.
The Debtor shall execute and consummate the Plan as follows:

   9.1.    **Vesting of Estate Property.** Estate Property, and the proceeds thereof, shall not vest in any subsequent entity but, rather, will remain property of the respective Debtor's Estate on a non-consolidated basis and shall be distributed in accordance with the terms of the Plan.

   9.2.    **Management and Winding Up.**

      9.2.1.    All Estate Property, including, but not limited to Bankruptcy Causes of Action, shall be administered and liquidated by and at the sole direction of the Plan Administrator. The Plan Administrator shall provide periodic reporting, not less than semi-annually, to the Secured Creditors and respond to reasonable inquiries regarding (a) the liquidation of the Bankruptcy Causes Action, (b) the amount of reserves for all Claims, and (c) Net Available Cash and Net Recoveries on Bankruptcy Causes of Action.

      9.2.2.    From and after the Effective Date, the Debtors shall continue in existence under the sole and exclusive control of the Plan Administrator for the purpose of (i) winding–down their respective affairs, (ii) liquidating, by conversion to cash or other methods, any remaining Assets as expeditiously as reasonably possible, (iii) enforcing and prosecuting causes of action (including Bankruptcy Causes of Action), claims, interests, rights and privileges of the Debtors and their respective estates not otherwise waived, released, or enjoined herein, (iv) resolving Disputed Claims, (v) administering and taking such actions as are necessary to effectuate the Plan, and (vi) filing appropriate tax returns.

      9.2.3.    The Plan Administrator shall serve as a fiduciary on behalf of the creditors of the Debtors' Chapter 11 Cases and shall use its own judgment and discretion in administering (or in the case of litigation, prosecuting or settling) and liquidating Estate Property in the manner and subject to the limitations set forth in the Plan.

      9.2.4.    The Plan Administrator may continue to employ any or all of the attorneys and financial advisors employed by the Debtors and the Committee for any purpose, including but not limited to Bankruptcy Causes of Action. In addition, the Plan Administrator may file applications to engage other professionals to assist in the performance of its duties.

      9.2.5.    Upon the Final Consummation of the Plan, the Plan Administrator shall file a Final Report, the Chapter 11 Cases may be closed, and the Debtors shall be deemed

dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; provided, however, that the Plan Administrator may file with the Office of the Secretary of State for the State of North Carolina certificates of dissolution.

        **9.3.**    **Executory Contracts and Leases.**

        **9.3.1.**    The Debtors have previously filed motions to assume and assign, or in the alternative to reject, most if not all executory contracts and unexpired leases. Any executory contracts and unexpired leases existing on the Effective Date which have not been assumed and assigned pursuant to a prior Order of the Bankruptcy Court shall be deemed rejected and entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a) of the Bankruptcy Code, of the rejection of such executory contracts and unexpired leases as of the Effective Date.

        **9.3.2.**    A Claim for damages arising from the rejection of an executory contract or unexpired lease shall be forever barred and shall not be enforceable against the Debtors' estates, and no holder of any such Claim shall participate in any distribution under the Plan with respect to that Claim unless (i) a Proof of Claim is filed with the Court within thirty (30) days from the Effective Date, or such other (whether earlier or later) deadline as may be set by the Court generally or with respect to any specific lease or contract rejected by a Debtor, and (ii) said Proof of Claim is determined to be an Allowed Claim, either because no timely objection is filed or because an objection is timely filed and the Court allows the Claim after Notice and Hearing.

        **9.4.**    **Funding on and after the Effective Date**: The Plan Administrator will use proceeds remaining on the Effective Date or thereafter recovered or generated from the liquidation of Assets and from recoveries on causes of action (including Bankruptcy Causes of Action) to fund payments as, to the extent and in the manner provided under the Plan. The Plan Administrator will use the post-confirmation reserve to pay the costs of administration of the Plan. In addition, the Plan Administrator will use proceeds recovered on Bankruptcy Causes of Action to pay fees and costs incurred in pursuing, litigating or settling such actions.

        **9.5.**    **Litigation:**  Pursuant to Section 1123(b)(3)(B), the Plan Administrator shall have and retain the exclusive right to pursue, negotiate and settle, in its discretion subject to approval by the Court after Notice and Hearing, any and all claim objections and causes of action

(including Bankruptcy Causes of Action) not otherwise waived, released or enjoined herein, and any and all such claims and causes of action shall be brought in this Court and shall be governed by Bankruptcy Rules 7001 et seq. Any compromise or other settlement of a controversy by or on behalf of the Debtors shall be subject to approval by the Court in accordance with the Bankruptcy Rules, or within such range or limitations as may be authorized by the Court without the necessity of further notice or hearing.

9.6.    **Reporting**.   The Debtors shall file a monthly report with the Court through and including the month immediately preceding the Effective Date.   The Plan Administrator shall file a consummation status report within sixty (60) days after entry of the Confirmation Order and on a quarterly basis thereafter until the filing of the Final Report.   The consummation status report shall set forth a summary of the following:

**9.6.1.**   The payments made or other treatment provided to holders of Allowed Claims in each Class.

**9.6.2.**   Whether the Debtors are in compliance with all distributions and payments required under the Plan.

**9.6.3.**   The status of any pending litigation.

**9.6.4.**   Any pending matters which may require further Court action.

**9.6.5.**   Projected date for filing a Final Report and request for entry of a Final Decree.

10.    **EFFECT OF CONFIRMATION OF THE PLAN.**   As the Plan provides for the liquidation of all Assets of the Debtors' estates, the Plan does not provide for the discharge of any Claims or Liabilities.   However, all proceedings and court actions seeking to establish or enforce pre-petition Claims or Liabilities of any nature against Estate Property or priorities received or retained by any creditor with respect to debts and obligations of the Debtors shall be permanently stayed and treated as specifically provided in the Plan.

11.    **OBJECTIONS TO CLAIMS, RESERVES AND DISTRIBUTIONS**

**11.1.**   **Claims**: The Plan Administrator may file an objection to any Claim within ninety (90) days after the Effective Date; provided however, no party may object to claims which have been allowed by prior Order of the Court or as set forth in the Plan with respect to the Allowed Claims of Advanced Holdings, Ideal and York Street Note Purchasers.   Objections not filed within such time shall be deemed waived; provided however, the period within which the

Plan Administrator may file objections to claims may be extended by the Court in response to one or more motions for such extension filed prior to the expiration of the then existing period for such objections to be filed. **THE ABSENCE OF AN OBJECTION TO A CLAIM PRIOR TO THE CONFIRMATION DATE, WHETHER AS TO A SCHEDULED OR FILED CLAIM, SHALL NOT BE DEEMED AN ACCEPTANCE OF ANY CLAIM NOR A WAIVER OF THE RIGHT TO OBJECT TO ANY CLAIM, AND THE HOLDER OF ANY SUCH CLAIM SHALL NOT BE ENTITLED TO ASSERT RELIANCE UPON ANY IMPLIED ACCEPTANCE OF SUCH CLAIM WHEN VOTING TO ACCEPT OR REJECT THE PLAN.**

  **11.2.**   **Intercompany Claims**: Claims by or between the Debtors which existed as of the Petition Date shall be deemed extinguished and eliminated as of the Effective Date. Claims by or between the Debtors which arose after the Petition Date shall be deemed fully satisfied by and though the Final Allocation.

  **11.3.**   **Reserves**: Any Claim, or portion thereof, which is to be paid in cash under the Plan and which is a Disputed Claim, shall be protected by requiring the Plan Administrator to set aside a reserve based on the Court's estimate of such Claim sufficient to treat said Claim in the same fashion as though the objection were denied and such Claim were deemed an Allowed Claim. In the event the objection is overruled, or a dispute is resolved in favor of the party asserting the Claim, the reserve shall be distributed to the holder of the Claim in accordance with the Plan. In the event the Disputed Claim is disallowed, the reserve shall be available for distribution in accordance with the provisions of this Plan, with the disallowed claim being excluded from the appropriate Class.

  **11.4.**   **Distributions.**

  **11.4.1. Timing of Distributions.** The Plan Administrator, after providing interim reserves in such amounts and for such purposes as deemed necessary in its reasonable discretion, shall make distributions to holders of Allowed Claims in Classes 1, 2 and 3 as follows: (i) an initial distribution of Net Available Cash on or before December 15, 2019, and (ii) subsequent distributions of Net Available Cash and Net Recoveries on Bankruptcy Causes of Action no less frequently than annually thereafter, and at such other times as deemed feasible by the Plan Administrator in its sole discretion after consultation with the Secured Creditors. Nothing contained herein shall limit the ability of the Plan Administrator to make distributions of

Net Available Cash and Net Recoveries on Bankruptcy Causes of Action to the Secured Creditors at any time. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day but shall be deemed to have been completed as of the required date.

**11.4.2. <u>Delivery of Distributions.</u>**  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the schedules filed with the Court unless superseded by the address as set forth on the proof of claim filed by such holders or other subsequent writing notifying the Debtor of a change of address.

**11.4.3. <u>Minimum Distributions.</u>**  No interim distribution shall be made in an amount less than $10.00, and any such interim distributions shall be held for the final distribution. No final distribution (which may include interim distributions of less than $10.00) shall be made in an amount less than $10.00. and any such final distribution shall be distributed to a charitable organization selected by the Plan Administrator.

**11.4.4. <u>Undeliverable and Unclaimed Distributions.</u>**  If any interim distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Administrator has been notified of such holder's then current address, at which time all missed distributions shall be made to such holder, without additional interest, from the date of the first attempted distribution.  All unclaimed distributions which exist as of the date of the final distribution to holders of Allowed Claims shall be distributed as follows: (i) with respect to unclaimed distributions to any creditor in an amount greater than $1,000, to the U.S. Treasury as provided in section 347 and Bankruptcy Rule 3011 for unclaimed distributions as in a Chapter 7 proceeding, and (ii) with respect to distributions to any creditor in an amount of $1,000 or less, to a charitable organization selected by the Plan Administrator. Checks issued in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Plan Administrator.

**11.4.5. <u>Setoffs.</u>**  The Plan Administrator may, on behalf of the Debtors and in accordance with section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and

causes of action of any nature that the Debtors may possess against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claims, rights and causes of action that they may possess against such holder; and provided further, that any claims of the Debtors arising before the Petition Date shall first be set off against Claims against the Debtors arising before the Petition Date.

12. **PROVISIONS FOR RETENTION OF JURISDICTION AND PROSECUTION AND DEFENSE OF CLAIMS AND CAUSES OF ACTION**.  The Court shall retain and may exercise its jurisdiction for determination in this case of any objections to claims not disposed of prior to or as a result of the entry of the Confirmation Order, the final determination of any causes of action (including Bankruptcy Causes of Action) brought in the Court, and matters reasonably necessary to implement the Plan, including, but not limited to the following:

12.1. **General Jurisdiction**: Until the entry of a Final Decree, the Court shall retain jurisdiction pursuant to section 1142 of the Bankruptcy Code and Bankruptcy Rules 3020(d) and 3021 to the extent necessary to implement the Plan; to hear and determine all claims against the Debtor; to hear, determine, and enforce all causes of action (including all Bankruptcy Causes of Action) arising in, arising under, or related to this case and which may exist on behalf of the Debtor; and, to confirm after Notice and Hearing (except as otherwise provided herein) any proposed compromise of any cause of action (including all Bankruptcy Causes of Action).

12.2. **Causes of Action**:  Pursuant to Section 1123(b)(3)(B), the Plan Administrator shall retain the sole and exclusive right to assert, commence, pursue, settle, compromise, abandon, waive, or release any claim or cause of action which may exist on behalf of the Debtors (including Bankruptcy Causes of Action) which accrued and was asserted or capable of assertion by any Debtor as a debtor-in-possession as of the Petition Date and that is not otherwise released, settled, enjoined or otherwise compromised by the terms of this Plan or the Confirmation Order.

12.3. **Specific Retention of Powers**:  In addition to the general provisions set forth above and notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date of the Plan, and the occurrence of Substantial Consummation of the Plan, the

Court shall retain such jurisdiction over this case as is legally permissibly, *inter alia*, by Final Order or judgment:

**12.3.1.** To classify, allow or disallow Claims, to direct distributions of funds under the Plan, and to hear and determine any controversies pertaining thereto.

**12.3.2.** To hear and determine any and all applications, adversary proceedings or other matters arising out of or related to the Plan.

**12.3.3.** To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated.

**12.3.4.** To liquidate or estimate the amount of any claim, or to determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated claim.

**12.3.5.** To adjudicate all disputes with respect to claims or any lien on any property of the Estate.

**12.3.6.** To adjudicate all claims or controversies arising during the pendency of this case.

**12.3.7.** To recover all Estate Property, wherever located, including recoveries on all claims and causes of action brought prior or subsequent to the Effective Date or capable of being brought prior or subsequent to the Effective Date that are not released, settled or otherwise compromised by the terms of this Plan.

**12.3.8.** To hear and determine matters covering federal, state, and local taxes pursuant to Sections 346, 505 and 1146 of the Bankruptcy Code.

**12.3.9.** To allow fees and reimbursement of the expenses of professional persons employed during this case or any other person or entity applying for compensation.

**12.3.10.** To construe or enforce the Plan so as to effectuate payments thereunder or to compel performance by any person reasonably necessary to achieve Final Consummation in accordance with the provisions hereof.

**12.3.11.** To make and enforce such orders as are necessary or appropriate to carry out the provisions of the Plan.

**12.3.12.** To enter such orders as may be necessary and proper for the orderly administration of the Bankruptcy Cases.

**12.3.13.**    To decide such other matters and for such other purposes as may be provided for in the Confirmation Order.

**12.4.    Other Courts**.  If the Court abstains from exercising, declines to exercise or is otherwise without jurisdiction over any matter arising out of this case, this Section 12 shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.    PROVISIONS FOR AMENDMENT OF THE PLAN.**  The Plan may be amended as follows:

**13.1.    Non-material Amendment**:  This Plan may be altered or modified by the Debtors after its submission for acceptance and before or after its confirmation, without Notice and Hearing, if the alteration or modification does not adversely change the priority, allowance, or treatment of the claim of any creditor as provided in section 1127 of the Bankruptcy Code and in Bankruptcy Rule 3019.

**13.2.    Material Amendment**:  This Plan may be altered or modified by the Debtor after submission for acceptance and before or after confirmation in a manner which adversely affects the interests of creditors only (i) as provided in section 1127 of the Bankruptcy Code and in Bankruptcy Rule 3019, and (ii) with the written consent of the Committee and the Secured Creditors.

**14.    GENERAL PROVISIONS**

**14.1.    Debtors.**  Until the entry of a Final Decree and completion of all payments contemplated by the Plan, or otherwise ordered by the Court, the Debtors acting by and through the Plan Administrator shall continue to have and exercise all of the powers and duties of a debtor-in-possession as provided in section 1107 of the Bankruptcy Code.

**14.2.    Exculpation.**  Neither the Debtors, the Committee, the Secured Creditors, nor any of their respective officers, directors, employees, advisors, attorneys, accountants, consultants or agents shall have or incur any liability for or to any holder of a Claim or Equity Interest for any act or omission in connection with, or arising out of, the administration of these Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

14.3.  **Mutual Releases.**   Except as otherwise provided in the Plan, upon the Effective Date the Debtors and their respective Estates, the Committee, and the Secured Creditors, and each of their respective officers, directors, employees, shareholders, members, attorneys, advisors, representatives, guarantors, affiliates, relatives and related entities, each waive and release any claims any of them may have had, now has, or may hereafter have against the other to the fullest extent permitted by law; provided, however, that nothing contained herein shall release any claims between Advanced Holdings and Ideal, including their respective affiliates, arising under any agreement entered into by such parties after the Petition Date. For the avoidance of doubt, the releases provided herein include, but are not limited to, any actions under chapter 5 of the Bankruptcy Code and any other applicable federal, state and local statutory claims.

14.4.  **Conditions to Effective Date.**   The Effective Date of the Plan is conditioned upon all of the following events: (i) entry of a confirmation order approving the Plan by the Bankruptcy Court on terms consistent with the Settlement Term Sheet; and (ii) dismissal of the Ideal Adversary Proceeding and the York Street Adversary Proceeding with prejudice as to all defendants.

14.5.  **Injunctions or Stays.**   Unless otherwise provided in the Plan, the Confirmation Order or other orders of the Court, all injunctions or stays generally provided for chapter 11 cases under section 362 of the Bankruptcy Code shall terminate on the Effective Date and be superseded by the provisions of Section 10.

14.6.  **Committee Dissolved.**   Upon the Effective Date, the Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from these Chapter 11 Cases. The retention and employment of the professionals retained by the Committee shall terminate as of the Effective Date, without prejudice to applications filed under sections 330 and 331 of the Bankruptcy Code.

14.7.  **Binding Effect.** The Plan shall be binding upon and inure to the benefit of the Debtors, holders of Claims, holders of Equity Interests, and all other parties in interest and their respective successors and assigns.

14.8.  **Notices.**   Any notice required to be provided to parties in interest under the Bankruptcy Code, Bankruptcy Rules or under the Plan shall be in writing and may be served

by electronic means through the Court's ECF system, or alternatively by (a) regular mail, postage prepaid, (b) hand delivery, (c) email, or (d) overnight delivery service, addressed to the appropriate parties and with copies of any such notice to be sent to the Bankruptcy Administrator, the Plan Administrator, and counsel for the Debtors.

       **14.9.**   <u>**Governing Law**</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of North Carolina shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

Dated: October 10, 2019

AE Bicycle Liquidation, Inc. (formerly known as Advanced Sports Enterprises, Inc.)

By: _____

AI Bicycle Liquidation, Inc. (formerly known as Advanced Sports, Inc.)

By: _____

Performance Direct, Inc.

By: _____

Bitech, Inc.

By: _____

Nashbar Direct, Inc.

By: _____

Respectfully submitted:

NORTHEN BLUE LLP
/s/ John A. Northen
John A. Northen
North Carolina State Bar No. 6789
jan@nbfirm.com
Vicki L. Parrott
North Carolina State Bar No. 25449
vlp@nbfirm.com
John Paul H. Cournoyer
North Carolina State Bar No. 42224
jpc@nbfirm.com
1414 Raleigh Road, Suite 435
Chapel Hill, North Carolina 27517
Telephone: (919) 968-4441
*and*
FLASTER/GREENBERG P.C.
William J. Burnett (PA Bar No. 75975)
(*pro hac vice*)
william.burnett@flastergreenberg.com
Harry J. Giacometti (PA Bar No. 55861)
(*pro hac vice*)
harry.giacometti@flastergreenberg.com
E. Richard Dressel (PA Bar No. 53297)
(*pro hac vice*)
Rick.Dressel@flastergreenberg.com
Damien Nicholas Tancredi (PA Bar No. 308317)
(*pro hac vice*)
Damien.Tancredi@flastergreenberg.com
1835 Market Street, Suite 1050
Philadelphia, PA 19103
(215) 279-9383 Telephone
(215) 279-9394 Facsimile

COUNSEL FOR THE
DEBTORS-IN-POSSESSION